John INSINGA, as Personal Representative of the Estate of Mildred Insinga, Deceased, Plaintiff–Appellant,

v.

Michelle LaBELLA, et al., Defendants.

Humana, Inc., d/b/a Biscayne Medical Center, Defendant–Appellee.

No. 86–5906.

United States Court of Appeals, Eleventh Circuit.

April 21, 1988.

Freiden & Hirsch, P.A., Joel D. Eaton, Podhurst, Orseck, Parks, Josefsberg, Eaton, Meadow & Olin, P.A., Miami, Fla., for plaintiff-appellant.

Henry Burnett, Fowler, White, Burnett, Hurley, Banick & Strickroot, P.A., Daniel F. Beasley, Miami, Fla., for defendant-appellee.

Before HILL, Circuit Judge, HENDERSON *, Senior Circuit Judge, and MURPHY **, District Judge.

PER CURIAM:

John Insinga, as personal representative of the estate of his late wife Mildred, appeals from an order entered by the United States District Court for the Southern District of Florida directing a verdict against him and in favor of the defendant-appellee, Humana, Inc., d/b/a Biscayne Medical Center ("Humana" or "Biscayne"). We hold that the district court had jurisdiction of the case. However, because it appears that the substantive controversy involves a question of Florida law which is determinative of the cause of action, but unanswered by controlling precedent of the Supreme Court of Florida or any other Florida appellate court, we certify the question for resolution by the highest court of that state.

On January 19, 1981, an individual named Morton Canton admitted Mildred Insinga, who was 68 years old at the time, to Biscayne, a hospital in North Miami, Florida. At that time, Canton was masquerading as a medical doctor under the name of "Dr. Michelle LaBella." Mrs. Insinga died on February 6, 1981 while a patient in the hospital. It was subsequently discovered that Canton was not a medical doctor, but rather, a fugitive from justice in Canada where he was under indictment for the manufacture and sale of illegal drugs. Canton had fraudulently obtained a medical license from the State of Florida and staff privileges at Biscayne using the name of Dr. LaBella, a deceased Italian physician.

Insinga filed a wrongful death action against several defendants in the Eleventh Judicial Circuit Court of Florida. The amended complaint contained charges against (1) Dr. LaBella, a/k/a Canton, for negligence in failing to diagnose and properly treat Mrs. Insinga; (2) the Board of Medical Examiners of the State of Florida ("Board"), for negligence in licensing Canton/LaBella; (3) the Department of Professional Regulation of the State of Florida ("Department"), for negligence in issuing a license to Canton/LaBella; and (4) Humana, a Delaware corporation with its principal place of business in Kentucky, for negligence in granting Canton/LaBella medical staff privileges. Because of the presence of two Florida defendants, there was not

---

* *See* Rule 34–2(b), Rules of the U.S. Court of Appeals for the Eleventh Circuit.

** Honorable Harold L. Murphy, U.S. District Judge for the Northern District of Georgia, sitting by designation.

the requisite diversity of citizenship present to support removal of the case to federal court.

Canton was extradited to Canada and never served with process.[1] The remaining defendants filed motions for summary judgment. During the pendency of these motions, the plaintiff voluntarily dismissed the Department. The Board's motion for summary judgment was granted on sovereign immunity grounds, but the state trial court denied Humana's motion. The state trial court entered a final judgment for the Board on June 3, 1986.

On the Monday following the expiration of 30 days from the date it received notice of the judgment in favor of the Board, Humana, as the sole remaining defendant, removed the case to the United States District Court for the Southern District of Florida. The plaintiff filed a motion to remand, contending, *inter alia*, that complete diversity of citizenship had not been created by a "voluntary" act of the plaintiff, but was the result of an "involuntary" dismissal of the remaining non-diverse defendant. The district court denied the motion without elaboration.

The jury trial against Humana began on August 25, 1986. In his opening statement, plaintiff's counsel stated that he intended to prove that Canton/LaBella negligently diagnosed and treated Mrs. Insinga and that, had she been properly treated, she would have had a 90% chance of survival. Counsel also said that he intended to prove that (1) Canton/LaBella was not a doctor, but a wanted criminal who had assumed the identity of a dead Italian physician; (2) he had fraudulently obtained a license from the State of Florida and staff privileges at Biscayne; (3) the hospital was negligent in failing to follow its own procedures to verify LaBella's application and because it breached the prevailing standard of care in granting him staff privileges; and (4) such lack of care was the cause of Mrs. Insinga's death. Although it is undisputed that Mrs. Insinga employed "Dr. La-

Bella" to treat her ailments several months before being admitted to Biscayne, the plaintiff claims that he and his wife relied on LaBella's representation that he had staff privileges at Biscayne in selecting him as her physician.

Prior to the close of the plaintiff's evidence, the district court, *sua sponte*, directed a verdict in favor of Humana. A written order followed on September 3, 1986, in which the district court concluded that, under Florida law, Humana did not owe Mrs. Insinga any duty of care and that, therefore, the plaintiff failed to state a cause of action against Humana. The district court was persuaded that the case was governed by *Reed v. Good Samaritan Hospital Ass'n*, 453 So.2d 229, 230 (Fla. 4th D.C.A. 1984) in which the court held that, "a hospital is not vicariously liable for the tortious acts of an independent contractor such as a physician in private practice to whom it has merely granted staff privileges." *See also*, *Wilson v. Lee Memorial Hospital*, 65 So.2d 40 (Fla.1953). The court distinguished the instant case from *Beam v. University Building, Inc.*, 486 So.2d 672 (Fla.Dist.Ct. App.1986), in which the court referred to the corporate negligence doctrine in dictum, on the basis that, unlike the plaintiff in this case, the plaintiff in *Beam* did not have the opportunity to select his own physician. The district court further noted that, heretofore, the corporate negligence doctrine has not been explicitly adopted in Florida and declined to apply the doctrine to this case. This appeal followed the denial of the plaintiff's motion for a rehearing.

Before us, the plaintiff argues (1) that the case was not properly removed from state court to the federal forum and (2) that, if the case was removable, Florida law recognizes the corporate negligence doctrine, under which a hospital could be held directly liable for its failure to properly investigate a medically incompetent applicant for staff privileges. *See generally* Annot. 51 ALR 3d 981 (1973).

---

**1.** Insinga has stipulated that he has no intention of ever serving Canton. *Insinga v. LaBella,* 817 F.2d 1469, 1470 (11th Cir.1987). Therefore, for all intents and purposes, Canton has been voluntarily dismissed from this action.

■ In challenging the district court's refusal to remand the case to the state court, the plaintiff relies upon the long-standing, judicially created "voluntary-involuntary" rule. This is a rule developed in diversity cases "that if the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case could not be removed." *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 546 (5th Cir.1967),[2] quoting Note, The Effect of Section 1446(b) on the Non–Resident's Right to Remove, 115 U.Pa.L.Rev. 264, 267 (1966). *See Great No. Ry. Co. v. Alexander*, 246 U.S. 276, 38 S.Ct. 237, 62 L.Ed. 713 (1918); *American Car & Foundry Co. v. Kettelhake*, 236 U.S. 311, 35 S.Ct. 355, 59 L.Ed. 594 (1915); *Lathrop, Shea & Henwood Co. v. Interior Constr. & Improvement Co.*, 215 U.S. 246, 30 S.Ct. 76, 54 L.Ed. 177 (1909); *Kansas City Suburban Belt Ry. v. Herman*, 187 U.S. 63, 23 S.Ct. 24, 47 L.Ed. 76 (1902); *Whitcomb v. Smithson*, 175 U.S. 635, 20 S.Ct. 248, 44 L.Ed. 303 (1900).

The proper time for removal is governed by 28 U.S.C. § 1446(b), which was amended to substantially its present form in 1949. Act of May 24, 1949, 63 Stat. 101, ch. 139, § 83. The statute reads, in pertinent part, as follows:

> If the case stated by the initial pleading is not removable, a petition for removal may be filed within thirty days after receipt by the defendant, through service or otherwise, of a copy of an amended pleading, motion, order or other paper from which it may first be ascertained that the case is one which is or has become removable.

Thus, the literal language of the statute does not appear to support the plaintiff's position. However, section 1446(b), as amended in 1949, has been widely interpreted as preserving the voluntary-involuntary rule. *See* 2 U.S.Code Cong.Serv. 1268, 81st Cong., 1st Sess. (1949). *See also Weems*,

380 F.2d at 548–49; 14A Wright, Miller & Cooper, Federal Practice and Procedure: Jurisdiction and Related Matters 2d § 3723 at 317–18 (1985); 1A Moore's Federal Practice para. 0.168 [3.–5–6] at 597 (1987).

Even though diversity was not created by a voluntary act of the plaintiff, Humana argues that the voluntary-involuntary rule does not mandate a remand in this case because the underlying justification for the rule is not present here. Humana contends that the only reason behind the rule is the desire to avoid a transfer of a case to federal court where the removal is premised on developments in the state court that could later be reversed by a state appellate court thereby relegating the parties to their non-diverse positions originally pled in the complaint. Thus, Humana, in essence, contends that the voluntary-involuntary rule rests solely upon the foundations of comity and judicial efficiency and that the principal consideration in this regard is finality. *See Self v. General Motors Corp.*, 588 F.2d 655, 660 (9th Cir.1978) (Ely, J., dissenting). In this case, Humana maintains that, since the plaintiff did not appeal the state court order dismissing the Board within 30 days, the elimination of the remaining resident defendant from the case is final and that the case was properly removable to federal court.

In *Quinn v. Aetna Life & Casualty Co.*, 616 F.2d 38, 40 n. 2 (2d Cir.1980), the Second Circuit adopted this finality/appealability rationale and held that a case was removable once an order dismissing the remaining non-diverse party became final. The court went so far as to suggest that, "[u]nder these circumstances, plaintiffs' failure to take an appeal constituted the functional equivalent of a 'voluntary' dismissal." *Id.* Clearly if *Quinn* is correctly decided, then removal would be proper here. We decline, however, to follow the *Quinn* reasoning.

In most of the instances in which the Supreme Court has employed the volun-

---

**2.** In *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981) (en banc), the Eleventh Circuit adopted as binding precedent all deci-

sions of the former Fifth Circuit rendered prior to October 1, 1981.

tary-involuntary rule, it appears that the elimination of the resident defendants was not final at the time the issue of the propriety of removal was considered because the state appellate process as to those defendants was not complete. *E.g., Kettelhake, Whitcomb, Herman.* However, this was not the case in *Lathrop, Shea & Henwood Co.* In that case, upon the involuntary dismissal of the complaint against the resident defendant railroad company, the nonresident defendant construction company had the case removed from the Supreme Court of the State of New York, the state trial court, to federal court. The federal court remanded the case because the appellate division of the state supreme court had not yet affirmed the judgment dismissing the action against railroad company. Following affirmance of that judgment, the construction company again removed the case to the federal court. The plaintiff filed a motion to remand to the state court, which was denied. The United States Supreme Court reversed and directed the federal court to remand the case to the state court. While invoking the voluntary-involuntary rule, the Court, "observed that the action against the railroad company was not dismissed by plaintiff, but, against its contention, by the supreme court of the state, whose judgment was affirmed, also against its contention, by the appellate division of that court. This did not take jurisdiction from the state court...." 215 U.S. at 249–50, 30 S.Ct. at 77, 54 L.Ed. at 179. Were lack of the finality the only rationale behind the voluntary-involuntary rule, the Supreme Court would not have invoked the rule in *Lathrop, Shea & Henwood* because, there, the appellate process as to the resident defendant was complete by the time the case was removed to the federal forum.

Furthermore, in *Kettelhake,* the Supreme Court made it clear that, while finality in the state court as to all resident defendants may be a necessary condition to support removal, it is not a sufficient prerequisite nor is it synonymous with voluntariness:

> [W]here there is a joint cause of action against defendants resident of the same state with the plaintiff and a nonresident

defendant, it must appear, to make the case a removable one as to a nonresident defendant because of dismissal as to resident defendants, that the discontinuance as to such defendants was voluntary on the part of the plaintiff, *and* that such action has taken the resident defendants out of the case, so as to leave a controversy wholly between the plaintiff and the nonresident defendants.

236 U.S. at 316, 35 S.Ct. at 356, 59 L.Ed. at 597 (emphasis added).

While the issue of finality/appealability may be one concern underlying the voluntary-involuntary rule, it is not the only one. There also appears to be a policy favoring a plaintiff's right, absent fraudulent joinder, to determine the removability of his case. *See Self v. General Motors Corp.,* 588 F.2d 655 (9th Cir.1978). This policy is well-established in federal question cases where the removability of a case depends on an examination of the face of the plaintiff's well-pleaded complaint, without recourse to the defendant's pleadings. *Louisville & Nashville R.R. v. Mottley,* 211 U.S. 149, 29 S.Ct. 42, 53 L.Ed. 126 (1908); *Chappell v. Waterworth,* 155 U.S. 102, 15 S.Ct. 34, 39 L.Ed. 85 (1894); *Tennessee v. Union & Planters' Bank,* 152 U.S. 454, 14 S.Ct. 654, 38 L.Ed. 511 (1894). The common origins of the voluntary-involuntary rule with *Mottley* and its progeny in federal question cases are evident in the *Alexander* case.

In *Alexander,* a state court wrongful death action brought under the Federal Employees' Liability Act ("FELA") was not removable at the outset because the FELA provides that the plaintiff's choice of forum is absolute. At the close of the plaintiff's case, it became apparent that the FELA did not apply because the plaintiff had failed to prove that the decedent was involved in interstate commerce at the time of his death. The defendant attempted to remove the case based on diversity of citizenship, contending that the complaint should now be treated as if never brought pursuant to the FELA. In rejecting this argument, the Court stated that,

> [i]t is ... settled that a case arising under the laws of the United States, non-

removable on the complaint, when commenced, cannot be converted into a removable one by evidence of the defendant or by an order of the court upon any issue tried upon the merits, but that such conversion can only be accomplished by the voluntary amendment of his pleadings by the plaintiff, or, where the case is not removable because of joinder of defendants, by the voluntary dismissal or nonsuit by him of a party or of parties defendant. [Citations to voluntary-involuntary rule cases including *Herman, Lathrop, Shea & Henwood* and *Kettelhake* ].

The obvious principle of these decisions is that, in the absence of a fraudulent purpose to defeat removal, the plaintiff may, by the allegations of his complaint, determine the status with respect to removability of a case arising under a law of the United States, when it is commenced, and that this power to determine the removability of his case continues with the plaintiff throughout the litigation, so that whether such a case, nonremovable when commenced, shall afterwards become removable, depends not upon what the defendant may allege or prove, or what the court may, after hearing upon the merits, in invitum, order, but solely upon the form which the plaintiff by his voluntary action shall give to the pleadings in the case as it progresses towards a conclusion.

246 U.S. at 281–82, 38 S.Ct. at 239–40, 62 L.Ed. at 716.

Notwithstanding the foregoing, we hold that this case was properly removed from state court. In *Whitcomb v. Smithson,* the seminal case on the voluntary-involuntary rule, the Court emphasized that the state court's dismissal of the remaining resident defendant "was a ruling on the merits, and not a ruling on the question of jurisdiction. It was adverse to plaintiff, and without his assent, and the trial court rightly held that it did not operate to make the cause then removable...." 175 U.S. at 638, 20 S.Ct. at 250, 44 L.Ed. at 305. While the Court did not state what the result would have been had the dismissal been premised on jurisdictional grounds, the obvious implication is that, had the state court dismissal been based on a finding of lack of jurisdiction over the resident defendant, the voluntary-involuntary rule would not have come into play.[3]

In this case, the state court's dismissal of the Board was based on sovereign immunity. Under Florida law, sovereign immunity is a "defense that relates solely to the jurisdiction of the court," not the merits of the case. *State Road Department v. Brill,* 171 So.2d 229, 230 (Fla. 1st DCA 1980). Under these circumstances, we hold that the voluntary-involuntary rule does not apply and that the case was properly removed to the federal district court.

Fraudulent joinder is a well established exception to the voluntary-involuntary rule. In order to sustain a fraudulent joinder, a state court must find either that there was no possibility that the plaintiff could prove a cause of action against the resident defendant or that the plaintiff fraudulently pled jurisdictional facts in order to subject that resident defendant to the jurisdiction of the state court. *Coker v. Amoco Oil Co.,* 709 F.2d 1433, 1440 (11th Cir.1983). For all intents and purposes, a trial court's finding that it lacks jurisdiction over a resident defendant is akin to a finding of fraudulent joinder of that defendant[4] in that it involves a determination by the court that the resident defendant was never properly before the court, rather than a determination that the court had jurisdiction of that defendant but

---

**3.** *See also, Herman,* 187 U.S. at 69, 23 S.Ct. at 26, 47 L.Ed. at 79 (quoting *Whitcomb* ); *Lathrop, Shea & Henwood Co.,* 215 U.S. at 251, 30 S.Ct. at 78, 54 L.Ed. at 179 (quoting *Whitcomb* ); *Kettelhake,* 236 U.S. at 315, 35 S.Ct. at 356, 59 L.Ed. at 597 (emphasizing that dismissals in *Herman* and *Lathrop* were on the merits); *Alexander,* 246 U.S. at 281, 38 S.Ct. at 239, 62 L.Ed. at 716 (a nonremovable case cannot be converted into a removable one by, *inter alia,* a court order "upon any issue tried upon the merits ...").

**4.** We do not mean to imply that the Board was fraudulently joined in this case, nor do we need to make that determination in light of our disposition of the case.

that the case against him, although not frivolous, was not meritorious.

Insinga maintains that the question lurking in the *Whitcomb* dictum was presented to and rejected by the Court in *Pullman Co. v. Jenkins*, 305 U.S. 534, 59 S.Ct. 347, 83 L.Ed. 334 (1939). We disagree. In *Pullman*, the Court held, *inter alia*, that the case was improperly removed because, at the time of removal by the non-resident defendant, there were two unserved fictitious resident defendants who had not been dismissed, either voluntarily or involuntarily, and who might later have been, and in fact were, named and served with process. *Cf. Southern Pacific Co. v. Haight*, 126 F.2d 900 (9th Cir.), *cert. denied*, 317 U.S. 676, 63 S.Ct. 154, 87 L.Ed. 542 (1942) (plaintiff who announces that she is ready for trial without having served resident defendants "voluntarily" abandons the joint character of the proceedings so that the case can then be removed). Significantly, the Court in *Pullman* did not even mention the voluntary-involuntary rule much less discuss its application to that case.

■ Having concluded that the district court had jurisdiction in this case, we believe that the substantive issue of state law raised by Insinga in this appeal involves a question of Florida law determinative of the cause but which is unanswered by controlling precedent of the Supreme Court of Florida and is appropriate for resolution by the highest court of that state. We, therefore, certify the following question to the Supreme Court of Florida pursuant to Rule 9.150, Florida Rules of Appellate Procedure:

> WHETHER FLORIDA LAW RECOGNIZES THE CORPORATE NEGLIGENCE DOCTRINE AND WHETHER IT WOULD APPLY UNDER THE FACTS OF THIS CASE.

We do not intend the particular phrasing of this question to limit the Supreme Court of Florida in its consideration of the problem posed by the entire case. In order to assist consideration of the case, the entire record, along with the briefs of the parties, shall be transmitted to the Supreme Court of Florida.[5]

---

**5.** Both parties have moved for an award of attorney's fees for their services on appeal. In light of our disposition of this case, a ruling on these motions would be premature. Accordingly, we do not reach the issue at this time.