Mary Catherine SPANN, Plaintiff,

v.

**NORTHWESTERN MUTUAL LIFE IN-SURANCE COMPANY, a corpora-tion, et al., Defendants.**

Civ. A. No. 91–A–1321–S.

United States District Court,
M.D. Alabama, D.S.

July 27, 1992.

Leah O. Taylor, Taylor & Roberson, Birmingham, Ala., for plaintiff.

Alan C. Livingston, Lee & McInish, Dothan, Ala. and J. Mark Hart, Spain, Gillon, Grooms, Blan & Nettles, and Lee Bains, Maibeth Porter, Birmingham, Ala., C.C. Torbert, Jr., Maynard, Cooper, Frierson & Gale, Montgomery, Ala., David Perez, Milwaukee, Wis., for defendants.

## MEMORANDUM OPINION AND ORDER

ALBRITTON, District Judge.

This cause is now before the court on the motion to remand filed by the plaintiff, Mary Catherine Spann ("Spann"), on November 21, 1991, and the motion to drop Jacob S. Behr as a defendant or in the alternative, to sever plaintiff's claims against him, filed by Northwestern Mutual Life Insurance Company ("Northwestern"), on May 11, 1992. The court has considered the pleadings, briefs, affidavits, and supporting documents filed by the parties and, for the reasons set out below, is of the opinion that the motion to remand is well taken and is due to be granted and the motion to drop or sever is due to be denied.

### I. FACTS

Spann is an Alabama resident. She filed this suit in Houston County, Alabama, against Northwestern and Jacob Behr. Northwestern is a corporation organized and existing under the laws of Wisconsin, with its principal place of business in Milwaukee, Wisconsin. Prior to October 1989, Jacob Behr ("Behr") was a resident of Houston County, Alabama. He disappeared on that date and has not been seen or heard from since.

The evidence before the court establishes the following facts:

On July 25, 1987, the plaintiff, Mary C. Spann ("Spann") signed certain documents purporting to be for the purpose of establishing a "Standardized Prototype Money Purchase Plan and Trust" with Northwestern. Her dealings were with Northwestern's agent, defendant Jacob S. Behr. All documents listed Mary C. Spann as "Employer". The employer's address was shown as 511 E. Haven Drive, Dothan, Alabama, which is Spann's home address.

An Adoption Agreement, by which Spann, as Employer, "adopts the Northwestern Mutual Life Insurance Company Standardized Prototype Money Purchase

Plan and Trust for those Employees who shall qualify as Participants hereunder," shows the "Plan Name" to be M.C. Spann Retirement Fund. The "Type of Entity" is shown as Sole Proprietorship. Mary C. Spann is named as Trustee and the Employer (Spann) is shown as Administrator and the Plan's Agent for Service of Legal Process. The number of participants in the Trust/Plan is shown as one (1). Spann's home address is given for her in all capacities.

A document entitled "Employee Benefit Plan—Statement of Disclosure, Acknowledgment, and Approval," signed on the same day, states that it is "designed to comply with all requirements of the Employee Retirement Income Security Act of 1974 (ERISA) for disclosure, acknowledgment, and approval in connection with the sale of Insurance or Annuity Contracts to employee benefit plans." The document states that the agent, Behr, has recommended that the M.C. Spann Retirement Fund (Name of Plan) purchase from Northwestern a contract designated as FPA type (flexible premium annuity), and Mary C. Spann is listed as the only Insured/Annuitant of the contract.

At the time the documents were signed, Spann paid over to Behr the sum of $30,000 which was from her personal Individual Retirement Account (IRA). She understood that this was an IRA roll-over to initially fund the M.C. Spann Retirement Fund, and she made subsequent payments to Northwestern which she understood were payments into her retirement fund.

Sometime subsequent to this transaction, Behr disappeared. An investigation by Northwestern revealed that no qualified retirement plan had been set up for Spann. Northwestern's records showed that $25,000 of Spann's $30,000 payment was deposited into an Insurance Service Account and that $5,000 had been refunded to Spann. Numerous complications surfaced as a result of Behr's handling of the matter, and Northwestern began attempts to restructure things to Spann's satisfaction. These attempts were unsuccessful, and Spann filed a suit for damages against Northwest-

ern and Behr in the Circuit Court of Houston County, Alabama, claiming misrepresentation, breach of contract, and negligence.

Northwestern removed this case under 28 U.S.C. § 1441 to federal court on October 30, 1992, on the ground that the state claims were preempted by the Employee Retirement Income Security Act of 1974, 29 U.S.C. §§ 1001, *et seq.* ("ERISA"). Later, Northwestern added diversity of citizenship as a separate ground for removal. Spann filed a motion to remand on November 21, 1991, pursuant to the provisions of 28 U.S.C. § 1447(c), claiming that the case was removed improvidently because plaintiff's claim does not involve an employee benefit plan under ERISA. Further, Spann argues that this court does not have jurisdiction due to a lack of complete diversity of citizenship among the parties.

## II. ANALYSIS

### A. ERISA

■ If this claim relates to an "employee benefit plan", it is preempted by ERISA, and the case was properly removed. 29 U.S.C. § 1144(a); *Pilot Life Ins. Co. v. Dedeaux,* 481 U.S. 41, 107 S.Ct. 1549, 95 L.Ed.2d 39 (1987). *See Farlow v. Union Cent. Life Ins. Co.,* 874 F.2d 791 (11th Cir.1989). The question for determination is whether there was an "employee benefit plan" within the meaning of ERISA to which this claim can relate.

■ ERISA governs two types of employee benefit plans. *See,* 29 U.S.C. § 1002. One is an "employee welfare benefit plan", which may provide such benefits as medical insurance, accident and disability benefits, etc. This type plan is not involved in this case. The second type employee benefit plan, and the type Northwestern contends exists in this case, is an "employee pension benefit plan".

In pertinent portions, an employee pension benefit plan is defined as

any plan, fund, or program ... established or maintained by an employer ... to the extent that by its express terms or

as a result of surrounding circumstances such plan, fund, or program—

(i) provides retirement income to employees,

....

29 U.S.C. § 1002(2)(A).

Spann contends that the transaction involved in this case does not evidence an employee benefit plan as defined by ERISA, because she was merely attempting to invest in a personal retirement fund, not to provide benefits for any employees. The court agrees.

In the seminal case of *Donovan v. Dillingham,* 688 F.2d 1367, 1371 (11th Cir. 1982), the Eleventh Circuit stated the requirement for a plan to be covered by ERISA as follows:

> The gist of ERISA's definitions of employer, employee organization, participant, and beneficiary is that a plan, fund, or program covers ERISA participants *because of their employee status in an employment relationship,* and an employer or employee organization is the person that establishes or maintains the plan, fund, or program. *Thus, plans,* funds, or programs *under which no* union members, *employees* or former employees *participate are not employee welfare benefit plans* under Title I of ERISA.[1] (Emphasis added)

The requirement that employees be participants is stated in the ERISA regulations as follows:

> (T)he term "employee benefit plan" shall not include any plan, fund, or program ... under which no employees are participants covered under the plan.... For example, a so-called "Keogh" or "H.R. 10" plan under which only partners or only a sole proprietor are participants covered under the plan will not be covered under Title I.

29 CFR § 2510.3–3(b).

In *Schwartz v. Gordon,* 761 F.2d 864 (2nd Cir.1985), it was held that fiduciary duties imposed by ERISA did not apply to a "Keogh" retirement plan maintained by a self-employed individual who was the sole contributor to and beneficiary of the account. This was because such a plan would not be covered by ERISA since no employees were participants. *See also, Peckham v. Board of Trustees, etc.,* 653 F.2d 424 (10th Cir.1981).

■ Here, all contributions came from Spann, the original contribution was a transfer from Spann's personal IRA, Spann was listed as employer, and Spann was the only participant. It seems clear to the court from all the evidence submitted that there was never any intention by Spann to establish a pension plan for employees, but only to establish a personal retirement plan. As such, the plan is not covered by ERISA.

Northwestern argues that a plan existed by virtue of the existence of an insurance program to which Spann made payments and that employees could have been added. It is also suggested that this was a plan established by Spann's wholly owned corporation, Spann, Inc., that Spann was an employee of the corporation and that Spann, Inc. had other eligible employees. The evidence in no way supports this contention. Spann, Inc. had an entirely separate program for employees. Spann, Inc. is not mentioned in any of the documents. Spann also owned other businesses. And, the undisputed evidence is that the funding involved in this case came entirely from Spann individually, not from Spann, Inc.

*Donovan* dictates an examination of all surrounding circumstances to determine whether an ERISA plan was created. Having made such an examination, the court determines that the plan was an individual retirement plan and not an employee pension plan subject to ERISA. That being so, the plaintiff's claim does not relate to an "employee benefit plan", and the case is not properly removable to this court on the basis of ERISA preemption.

### B. Diversity

■ The diversity statute confers jurisdiction in general terms on the federal

---

**1.** Although *Donovan* dealt with an employee welfare benefit plan, this language would apply with equal force to an employee pension benefit plan.

courts in all civil actions "between citizens of different states" in which the jurisdictional amount is met. Section 1332(a)(1). One of the Supreme Court's earliest cases, *Strawbridge v. Curtiss*, 7 U.S. (3 Cranch) 267, 2 L.Ed. 435 (1806), held that there is no diversity jurisdiction when any party on one side of the dispute is a citizen of the same state as any party on the other side.

Since Spann is a citizen of Alabama, this court only has jurisdiction over this case if all the defendants are citizens of states other than Alabama. Spann challenges Northwestern's contention that Behr is not a citizen of Alabama. Spann claims that Behr is still a citizen of Alabama. If that is the case, then diversity of citizenship is not present and this case must be remanded to state court.

■ The burden of pleading diversity of citizenship is upon the party invoking federal jurisdiction and if the diversity of citizenship is challenged that party also bears the burden of proof. *Mas v. Perry*, 489 F.2d 1396, 1399 (5th Cir.1974).[2] Therefore, Northwestern has the burden of proving that Behr is not a resident citizen of Alabama.

■ A person's domicile is the place of "his true, fixed, and permanent home and principal establishment, and to which he has the intention of returning whenever he is absent therefrom...." *Id.* (citations omitted). Once a domicile is established it continues until a new one is established. *Id.* at 1400. A change in domicile can only be effected by a combination of two elements: "(a) taking up residence in a different domicile with (b) the intention to remain there." *Id.* at at 1399.

■ Prior to his disappearance Behr was domiciled in Dothan, Alabama. Since no one knows where he went there is no way to show that he has taken up residence elsewhere with intent to remain.

Northwestern attempts to show that he is domiciled in Georgia through the following facts: (1) he grew up in Georgia; (2) his daughter testified that he had a desire to live in Thompson, Georgia; and (3) his car was found in Atlanta, Georgia. These facts are irrelevant to any determination of Behr's domicile. People do not necessarily return to their birthplace, nor do people always live out their desires, and the car being found in Atlanta may mean nothing more than that someone drove it there and abandoned it. Northwestern has produced no evidence that Behr has established a new domicile, and thus, his domicile remains Alabama. Diversity of citizenship is, therefore, not present and this court does not have jurisdiction to hear this case.

Alternatively, Northwestern asks the court under Fed.R.Civ.P. 21 to drop Behr as a defendant in this suit in order to establish diversity.[3] Northwestern cites several cases in which both trial and appellate courts have used this rule to drop dispensable defendants. These cases, however, involve suits filed originally in federal court, rather than removal cases. The non-diverse defendants in these cases were dropped at the insistence of the plaintiffs in order to preserve federal jurisdiction, rather than on motion of a diverse defendant seeking to create federal jurisdiction on removal. This is a crucial distinction because of the long-established voluntary-involuntary rule.

■ The "voluntary-involuntary" rule holds that if the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case becomes removable, but if the dismissal was the result of either the defendant's or the court's action against the wish of the plaintiff, the case cannot be removed. *Insinga v. LaBella*, 845 F.2d 249, 252 (11th Cir.1988). Thus, any action by the court to dismiss Behr would not aid Northwestern in getting this case removed to federal court.

2. In *Bonner v. City of Prichard*, 661 F.2d 1206 (11th Cir.1981) (en banc), the Eleventh Circuit Court of Appeals adopted as binding precedent the decisions of the former Fifth Circuit, decided prior to October 1, 1981.

3. Northwestern does not contend that there is a misjoinder of defendants.

There is a policy favoring a plaintiff's right, absent fraudulent joinder, to determine the removability of his or her case. *Id.* at 253.[4] Further, a plaintiff has a right to sue those parties that he feels are responsible for any harm that he has suffered, and when a singular harm was caused by two or more entities then the interests of justice will normally point toward their being sued together. That is the instance in this case, and therefore, the court does not deem it appropriate to drop Behr from plaintiff's lawsuit against Northwestern.

Northwestern also asks the court to sever the claims against Northwestern and Behr. This would be appropriate only if the court has jurisdiction. The court is sympathetic to Northwestern's argument that it would be fundamentally unfair to subject it to a trial with a co-defendant who has not been found and will not be present for trial. This issue, however, can be addressed by the state court.

Behr's whereabouts is unknown and his last known domicile was Alabama. As such, his current domicile for diversity purposes is still considered to be Alabama. Thus, the plaintiff and the defendant, Behr are both domiciled in Alabama, and therefore, there is not complete diversity of citizenship as required by *Strawbridge.* Further, the court does not consider the dropping of Behr as a defendant over the objection of the plaintiff to be appropriate.

## III. CONCLUSION

Plaintiff's claim does not relate to an employee benefit plan governed by ERISA, and there is not complete diversity of citizenship between plaintiff and the defendants. Accordingly, it is

ORDERED that plaintiff's motion to remand is due to be and it is hereby GRANTED. Additionally, Defendant's motion to drop Jacob S. Behr as a defendant or, in the alternative, to sever plaintiff's claims

against him, is due to be and it is hereby denied.

Finally, the clerk of the court is DIRECTED to effectuate the remand.

---

4. Northwestern argues at one point that Behr was fraudulently joined because he was served by publication. Northwestern argues that service by publication is not sufficient against a non-resident defendant. As stated previously, however, Behr is considered a resident of Alabama until residency is established elsewhere.