MURDOCK, Justice.
Reginald K. Hayes appeals from the dismissal by the Lowndes Circuit Court of his action against Jo Ann Henley (“Henley”), both individually and in her capacity as the personal representative of the estate of her deceased husband Earl Hoyt Henley (“Hoyt”), for injuries Hayes sustained when his automobile struck a horse on a highway. We affirm in part, reverse in part, and remand.

I. Facts and Procedural History

On October 24, 2008, then 19-year-old Hayes was driving his 1992 Mazda automobile on Alabama Highway 21 in Lowndes County when his automobile struck a horse. The horse rolled onto the roof of the automobile and the roof collapsed, breaking Hayes’s neck and rendering him a quadriplegic.
On October 20, 2010, Hayes filed in the Lowndes Circuit Court a multicount complaint against Mazda and against Henley, individually and in her capacity as the personal representative of the estate of her husband Hoyt, who died April 8, 2010 — approximately a year and a half after the accident. Hayes alleged that the horse he struck belonged to Hoyt and/or Henley and that Hoyt and/or Henley had allowed the horse to roam onto Highway 21, thereby causing the accident. As to Mazda, Hayes alleged that the automobile was defectively designed and/or manufactured and that it was not crashworthy.
On December 2, 2010, Henley filed a motion to dismiss the claims asserted against her as the personal representative of Hoyt’s estate, contending that Hayes had not alleged facts sufficient to state a claim upon which relief could be granted based on § 3-5-3, Ala.Code 1975. On the same date, Henley filed a motion to dismiss or, in the alternative, for a summary judgment as to the claims asserted against her in her individual capacity. Finally, Henley also filed an affidavit in which she testified that she “did not personally, individually or jointly own” any horses or pastures in Lowndes County and that she “did not knowingly or willfully place any livestock, including, but not limited to, horses on any Alabama roadway and/or highway.” [1]
*62 Hayes filed oppositions to both motions. Along with his opposition to the motion to dismiss as to Henley individually, Hayes’s counsel filed a Rule 56(f), Ala. R. Civ. P., affidavit requesting a continuance in order to take Henley’s deposition concerning the issue of the ownership of the horse Hayes struck with his automobile.
On February 2, 2011, the circuit court held a hearing on the two motions. On February 7, 2011, the circuit court entered two orders in which it granted Henley’s motions and dismissed the claims against Henley both in her individual capacity and in her capacity as personal representative of Hoyt’s estate. It does not appear that the circuit court ruled upon Hayes’s Rule 56(f) request for additional discovery.
On the following day, February 8, 2011, Mazda filed, pursuant to 28 U.S.C. § 1446, a notice of removal of the action to the United States District Court for the Middle District of Alabama (“the federal district court”). Mazda based the removal to federal court on diversity jurisdiction under 28 U.S.C. § 1332.
On March 1, 2011, Hayes filed a notice of appeal of the circuit court’s orders dismissing his claims against Henley in her individual and representative capacities.
On March 19, 2011, Hayes filed in the federal district court a motion to remand the action to the Lowndes Circuit Court. Subsequently, Hayes and Mazda reached a settlement concerning Hayes’s claims against Mazda. Accordingly, on April 29, 2011, Hayes and Mazda filed a joint stipulation of dismissal of the federal action with prejudice. On May 2, 2011, the federal district court entered an order dismissing with prejudice the removed action and denying Hayes’s motion to remand the action to the circuit court as moot.

II. Analysis

We begin by noting that Henley has filed a motion to dismiss Hayes’s appeal in which she contends that this Court lacks jurisdiction. The premise for Henley’s motion to dismiss this appeal is, in essence, the notion that the claims against Henley, though they had been dismissed by the Lowndes Circuit Court before the removal of the action to the federal district court, were somehow transferred with the action to the federal district court when the notice of removal was filed and that the federal court’s eventual order dismissing the action before it with prejudice put an end to the litigation between Hayes and Henley. We cannot accept the notion, for which we can find no authority, that the federal district court’s eventual dismissal with prejudice of the matter pending before it somehow served as a dismissal with prejudice of Hayes’s claims against Henley, a nondiverse defendant, claims that had been the subject of a dismissal order entered by the circuit court before the removal of the action to the federal district court — an order without which no removal could have occurred to begin with. Acceptance of Henley’s view would require us to understand the federal district court’s order as assuming jurisdiction over Hayes’s claims against an Alabama citizen, Henley, and adjudicating those claims on the merits, despite the fact that the presence of those claims in the action removed to the federal court would have defeated that court’s diversity jurisdiction.[2]
Henley cites this Court’s decision in Weinrib v. Duncan, 962 So.2d 167, 169 *63 (Ala.2007), for the proposition that, once a case is removed to federal court, a state trial court is divested of jurisdiction. Thus, reasons Henley, the claims against Henley necessarily were removed to the federal district court. Weinrib, however, involved a question as to whether a federal court’s eventual dismissal of removed federal claims, with respect to which it was exercising federal-question jurisdiction pursuant to 28 U.S.C. § 1381, should be deemed an “automatic” remand of state-law claims that did in fact travel with the removed federal claim to federal court as statutorily permitted “supplemental” state-law claims pursuant to 28 U.S.C. § 1367. That is not the procedural posture of the case before us; unlike Weinrib, the basis for removal jurisdiction in the present case is diversity, and, in such a case, the federal court has no “supplemental jurisdiction” over claims asserted against a nondiverse defendant. Moreover, unlike the claims asserted against the nondiverse defendant in the present case, the state-law claims at issue in Weinrib had not been dismissed by the state court before the removal of the case to federal court.[3]
Although the federal district court here clearly could not and did not consider the claims asserted against the nondi-verse defendant and dismissed by the Lowndes Circuit Court to have been removed to it, a conclusion with which we agree, a complete understanding of the nature and extent of the case removed to and eventually dismissed with prejudice by the federal district court and, as a corollary, this Court’s jurisdiction over the present appeal, requires some discussion of the federal doctrine known as the “voluntary-involuntary rule” pursuant to which it appears the federal district court could have declined to exercise removal jurisdiction.
*64 “[T]he long-standing, judicially created ‘voluntary-involuntary’ rule ... is a rule developed in diversity cases ‘that if the resident defendant was dismissed from the case by the voluntary act of the plaintiff, the case became removable, but if the dismissal was the result of either the defendant’s or the court’s action against the wish of the plaintiff, the case could not be removed.’ Weems v. Louis Dreyfus Corp., 380 F.2d 545, 546 (5th Cir.1967), quoting Note, The Effect of Section 1446(b) on the Non-Resident’s Right to Remove, 115 U. Pa. L.Rev. 264, 267 (1966).”
Insinga v. LaBella, 845 F.2d 249, 252 (11th Cir.1988) (footnote omitted).
“Behind the [voluntary-involuntary] rule is a notion of finality that is essential to ‘prevent removal to a federal court when the nondiverse party was eliminated by a state court order that might be reversed on appeal.’ 14 Wright, Miller & Cooper, § 3723. See also Weems v. Louis Dreyfus Corp., 380 F.2d 545 (5th Cir.1967).”
Barron v. Werner Enters., Inc., 462 F.Supp.2d 1217, 1219 (M.D.Ala.2006).[4]
Federal courts have recognized that, without the voluntary-involuntary rule, the circumstance that in fact presents itself here — a dismissed claim being subject to reconsideration and appeal in a state court while the remainder of the action is being litigated in federal court—could occur. As the United States Court of Appeals for the former Fifth Circuit explained in Weems v. Louis Dreyfus Corp., 380 F.2d 545, 546 (5th Cir.1967):
“[The voluntary-involuntary rule] prevents removal of those cases in which the issue of the resident defendant’s dismissal has not been finally determined in the state courts. This avoids the duplication and expense which would result if a resident defendant was dismissed on an appealable ground, the nonresident was permitted to remove, and the plaintiff then obtained a reversal of the dismissal in the state appellate courts. On the other hand, that danger does not arise where a plaintiff voluntarily drops a resident defendant since appeal then is not available, and the elimination of the resident defendant from the case is final.”
(Emphasis added.) As the federal court put it in Ennis v. Queen Insurance Co. of America, 364 F.Supp. 964, 966 (W.D.Tenn.1973):
“The reason for the ‘voluntary dismissal’ rule is based on judicial efficiency. The voluntary dismissal of a resident defendant is not appealable. Such a dismissal finally determines who are the parties to the action in a state court proceeding immediately prior to removal to a federal court. The involuntary dismissal of a resident defendant, however, is appeal-able. Thus, an involuntary dismissal would involve the possibility of duplication and expense of an appeal being heard in state courts and the same proceeding being before the federal courts at the same time, if such a case could be removed to the federal courts.”
(Emphasis added.)
In Barron v. Werner Enterprises, Inc., the federal court considered a case that, *65 like this one, involved an effort to remove an action to a federal court based on diversity jurisdiction within a short time following the state trial court’s dismissal of claims against Alabama residents and before the plaintiff had had an opportunity to ask the state trial court to reconsider that dismissal. The federal court explained:
“[The nonresident defendant] cannot, with removal, cut off [the Alabama plaintiffs] proper right to ask the state trial court to reconsider ... dismissal [of the Alabama defendants] and, failing in that effort, to ask the state appellate courts, including the Alabama Supreme Court, to review the action of the trial court. In short, [the nonresident defendant] cannot, by itself, foreclose any state appellate review of the state trial court’s action.”
462 F.Supp.2d at 1220 (emphasis added).[5]
Of course, it is not for this Court to determine whether the federal district court should or should not have remanded this case based on the voluntary-involuntary rule. Our discussion of that rule is merely for the purpose of developing an understanding of the purpose and limitations of the rule, and particularly the fact that the federal courts that have developed and applied that rule understand it as a rule that, if not applied, would lead to duplicative litigation in federal courts in light of the fact that the dismissed claims remain for reconsideration or appeal in the state-court system. The voluntary-involuntary rule was not applied here, and, as a result, the claims against the nondiverse defendant previously dismissed by the state court did remain for reconsideration and appeal in the state-court system.[6] We therefore proceed to consider the merits of Hayes’s appeal.
The claims alleged by Hayes against Henley in this case are subject to the restrictions imposed by Ala.Code 1975, § 3-5-3(a), which states:
“(a) The owner of such livestock or animal being or running at large upon the premises of another or upon the public lands, roads, highways or streets in the State of Alabama shall be liable for all damages done to crops, shade or fruit trees or ornamental shrubs and flowers of any person, to be recovered before any court of competent jurisdiction; provided, that the owner of any stock or animal shall not be liable for *66 any damages to any motor vehicle or any occupant thereof suffered, caused by or resulting from a collision with such stock or other animal, unless it be proven that such owner knowingly or wilfully put or placed such stock upon such public highway, road or street where such damages were occasioned.”
(Emphasis added.) “The duty to fence livestock does not subject the owner to liability for damages or injuries to occupants of motor vehicles resulting from collisions of the vehicle with the livestock unless the owner knowingly or wilfully puts the livestock on the road.” Carpenter v. McDonald, 495 So.2d 640, 641 (Ala.1986).
“Our cases have consistently held that there is no cause of action under § 3-5-3 for a plaintiff-motorist who is injured because his car collided with livestock which had strayed onto a highway through the negligence, gross negligence or recklessness of its owner. In Randle v. Payne, 39 Ala.App. 652, 107 So.2d 907 (1958), where a bull owner was being sued under Code 1940, Tit. 3, § 79, (the predecessor of § 3-5-3) by the driver of a truck that collided with the bull on Highway 11, the Court of Appeals held: ‘There must be proof to the effect that the owner of the stock knowingly or wilfully placed the stock upon the public highway.’ Randle, supra, 39 Ala.App. at 656, 107 So.2d at 910. In McGough v. Wilson, 273 Ala. 179, 137 So.2d 43 (1962), which case likewise involved the collision of a motor vehicle and a bull on a public highway, this court took note of the Randle decision and stated: ‘[I]ts majority opinion held, in effect, that an owner of livestock is not liable in damages to a motorist involved in a collision with his livestock for negligence in permitting the stock to be on the highway in view of the statute.’ McGough, supra, 273 Ala. at 182, 137 So.2d at 45. In McGough this court added:
“ ‘Knowingly and willfully doing an act is different from inadvertently doing the same act, or permitting it to be done through inadvertence or negligence.’
“McGough, supra, 273 Ala. at 183, 137 So.2d at 46 (emphasis supplied).
“In reference to the two cases referred to above, the Court of Civil Appeals in Carter v. Alman, 46 Ala.App. 633, 247 So.2d 676 (1971), a factually similar case, stated:
“ ‘These cases plainly state that for recovery, a motorist must submit proof that the owner of the feasant beast placed or put it upon the highway with a “designed set purpose, intention, or deliberation. ” Evidence of negligence or gross carelessness is not enough. There was no evidence introduced by appellant in the trial below with the slightest tendency to indicate acts of such nature by appel-lee.’
“Carter v. Alman, 46 Ala.App. at 635, 247 So.2d at 677 (emphasis supplied).”
Ex parte Jackson, 378 So.2d 1112, 1114 (Ala.1979).
Hayes’s complaint does not assert liability against Henley in her individual capacity other than as an alleged owner of the horse Hayes struck with his vehicle. As noted, Henley submitted an affidavit in which she testified that, at the time of the accident, she “did not personally, individually or jointly own” any horses or pastures in Lowndes County. Henley also averred that she “did not knowingly or willfully place any livestock, including, but not limited to, horses on any Alabama roadway and/or highway.” Rule 12(b), Ala. R. Civ. P., states:
“If, on a motion asserting the defense numbered (6) to dismiss for failure of *67 the pleading to state a claim upon which relief can be granted, matters outside the pleading are presented to and not excluded by the court, the motion shall be treated as one for summary judgment and disposed of as provided in Rule 56....”
The record before us contains no evidence contradicting the above-quoted aver-ments in Henley’s affidavit, and there is no indication that the circuit court excluded these averments. Nor does Hayes’s brief to this Court make a cognizable argument that the circuit court erred in ruling upon Henley’s motion without first allowing Hayes some further opportunity to conduct discovery pursuant to Rule 56(f). Accordingly, the circuit court’s order disposing of Hayes’s claims against Henley in her individual capacity is due to be affirmed.
We cannot reach the same conclusion, however, as to the circuit court’s disposition of all Hayes’s claims against Henley in her capacity as personal representative of Hoyt’s estate. Unlike the evidence as to Henley, there is no evidence in the record indicating that Hoyt was not the owner of the horse in question, nor was there any evidence before the circuit court as to the state of his knowledge regarding the presence of the horses on the highway before the accident. Thus, we must evaluate whether the circuit court, without the aid of any “matter outside the pleading,” correctly disposed of the claims against Henley in her representative capacity, i.e., whether the allegations of the complaint were insufficient to state a claim under Alabama law. See Rule 12(b)(6), Ala. R. Civ. P.
The claim made in the complaint against Henley in her representative capacity is based on the allegation that either she, personally, or Hoyt was the owner of the horses at the time of the accident. In count V of the complaint, Hayes specifically alleges that the owner of the horses “knowingly and/or wilfully put or placed the horses on Highway 21 in Lowndes County, Alabama.” This allegation comports with the requirements of § 3-5-S(a), Ala.Code 1975. “Under Rule 8, Ala. R. Civ. P., a complaint is sufficient if it puts the defendant on notice of the claims against him.” Bethel v. Thorn, 757 So.2d 1154, 1158 (Ala.1999). Moreover, “ ‘ “a dismissal for failure to state a claim is properly granted only when it appears beyond a doubt that the plaintiff can prove no set of facts entitling him to relief.” ’ ” Boswell v. Liberty Nat’l Life Ins. Co., 643 So.2d 580, 581 (Ala.1994) (quoting Grant v. Butler, 590 So.2d 254, 255 (Ala.1991), quoting in turn Greene County Bd. of Educ. v. Bailey, 586 So.2d 893, 897 (Ala.1991)). Given Hayes’s allegations, it is possible that he could prove a set of facts under which Hoyt’s estate is liable for Hayes’s injuries. Accordingly, the dismissal of the claim against Henley in her representative capacity for failure to state a claim was error insofar as it concerned the allegations in count V of a knowing and willful placement of the horses upon the highway.
Based on the foregoing, we reverse the circuit court’s order as to Hayes’s allegation that Hoyt, as the owner of the horses, knowingly and willfully placed them upon the highway. In all other respects, we affirm the circuit court’s judgment.
AFFIRMED IN PART; REVERSED IN PART; AND REMANDED.
MALONE, C.J., and WOODALL, BOLIN, and MAIN, JJ., concur.

. Hayes alleges that more than one horse was on Highway 21 at or about the time of the *62 accident.

. 28 U.S.C. § 1332 states: "(a) The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $75,000, exclusive of interest and costs, and is between — (1) citizens of different States.”

. As noted, in Weinrib, this Court stated that once removal had occurred, the state trial court was divested of "jurisdiction” over the underlying case; as authority the Court cited the text of the federal removal statute, 28 U.S.C. § 1446(d), which states that, after removal is effectuated, the state court "shall proceed no further” unless and until the case is remanded. In Ex parte Metropolitan Life Ins. Co., 707 So.2d 229, 232 (Ala.1997) (quoting Doerr v. Warner, 247 Minn. 98, 106, 76 N.W.2d 505, 512 (1956), adopted by this Court in King v. Landrum, 370 So.2d 945 (Ala.1979)), however, this Court stated:
" ‘It is well settled that jurisdiction once acquired by a state court is continuous though the case has been removed to the United States District Court and later remanded to the state court. The basic correctness of this rule becomes at once apparent if it is borne in mind that the order removing an action to a Federal court does not terminate the state court’s jurisdiction but merely stays or interrupts proceedings in that court pending a disposal of the action by the Federal court.’ ”
The Court in Metropolitan Life also stated that, in adopting the above-quoted language in King, the Court "implicitly overruled an earlier line of cases holding that the proper removal of an action from a state court to a federal court immediately divests the state court of jurisdiction and mak[es] the subsequent action by the state court coram non judice." Metropolitan Life, 707 So.2d at 232.
Because Weinrib is distinguishable from the present case on the grounds explained in the text, it is not necessary for purposes of resolving this case to consider further whether our jurisdictional statement in Weinrib should be revisited. Even if claims removed to a federal court are deemed to be within the "jurisdiction" of that court to the exclusion of the state court in which they originated, this principle could have no application to the claims here, which, unlike those in Weinrib, were dismissed by the state court prior to the removal of the case and, furthermore, were claims against a nondiverse defendant that, again unlike the claims in Weinrib, could not be deemed to have been removed to the jurisdiction of the federal court for adjudication on the merits without defeating the jurisdiction of that court.

. The Insinga court also noted that "[w]hile the issue of finality/appealability may be one concern underlying the voluntary-involuntary rule, it is not the only one. There also appears to be a policy favoring a plaintiff’s right, absent fraudulent joinder, to determine the removability of his case.” Insinga, 845 F.2d at 253. See also Vogel v. Merck & Co., 476 F.Supp.2d 996, 1004 (S.D.Ill.2007) (citing several cases in support of the proposition that ”[t]he purpose of the [voluntary-involuntary] rule is to protect a plaintiff’s right to choose his or her forum”).

. As one well known treatise has explained, the voluntary-involuntary rule is based on a notion of finality that is essential to "prevent[ ] removal to federal court when the non-diverse party was eliminated by a state court order that might be reversed on appeal,” 14B Charles Alan Wright et al., Federal Practice & Procedure § 3723 (2009), obviously referring to the possibility of a reversal on appeal in the state-court system given that a federal court's assumption of jurisdiction over a claim against a resident defendant would defeat the diversity jurisdiction of that very court. As the United States Court of Appeals for the Eleventh Circuit observed in Insinga, 845 F.2d at 252-53: "In most of the instances in which the Supreme Court has employed the voluntary-involuntary rule, it appears that the elimination of the resident defendants was not final at the time the issue of the propriety of removal was considered because the state appellate process as to those defendants was not complete.”

. Indeed, it would appear that the reason the federal district court in fact saw no need to order a remand based on the voluntary-involuntary rule but instead found it appropriate to simply dismiss the action before it "with prejudice” and simultaneously deny Hayes’s motion to remand as "moot” is that the settlement and dismissal of the claims against Mazda happened so soon after removal (i.e., before the federal district court had an opportunity to rule upon the remand motion) and upon that dismissal the federal district court did not consider there to be any other claims remaining before it, thus making the motion for remand moot.