James H. **LANE,** Jacqueline M. Lane, and Robert C. **Donnenwirth,** on behalf of themselves and others similarly situated, Plaintiffs,

v.

**CHAMPION INTERNATIONAL CORP., et al., Defendants.**

**Civ. A. No. 93–0914–BH–M.**

United States District Court, S.D. Alabama, S.D.

Feb. 2, 1994.

---

725

Bayless E. Biles, Bay Minette, AL, Mary E. Murchison, Foley, AL, Richard A. Freese, Burr & Forman, Birmingham, AL, J. Alan Cox, Tallahassee, FL, for plaintiffs.

G. Sage Lyons, Mobile, AL, Katherine Armstrong, Skadden, Arps, Slate, Meagher and Flom, New York City, Louis C. Woolf, Knoxville, TN, for defendants.

## ORDER

HAND, Senior District Judge.

On November 8, 1993, defendant Champion International Corporation filed a notice of removal of this action from state court to the United States District Court for the Southern District of Alabama (tab 1). Now before this court are the plaintiffs' motion (tab 5) to transfer this action to the Honorable Richard W. Vollmer, United States District Judge for the Southern District of Alabama, a defendant's motion (tab 2) to strike the plaintiffs' amendment to second amended complaint, and the plaintiffs' motion to remand (tab 14).

### 1. Background

Plaintiffs James H. and Jacqueline M. Lane, and Eugenia H. Elebash filed this action in the state Circuit Court of Baldwin County, Alabama, on November 9, 1992, on behalf of themselves and others who own real property on Perdido Bay in Baldwin County,

Alabama, and Escambia County, Florida.[1] The original defendants included Champion International Corporation (Champion), which has a paper mill in Cantonment, Escambia County, Florida; Doug Owenby, a citizen and resident of Florida who manages Champion's Cantonment plant; and several fictitious defendants. The plaintiffs' claims arise from their allegations that the fictitious defendants improperly released toxins and other pollutants into Eleven Mile Creek, which flows into Perdido Bay, and into Perdido Bay itself.

These allegations were previously before this court when defendant Champion filed another notice of removal[2] based on diversity jurisdiction under 28 U.S.C. § 1332. Although plaintiffs James H. and Jacqueline M. Lane and defendant Owenby were Florida domiciliaries, which would ordinarily prohibit diversity jurisdiction,[3] defendant Champion contended diversity jurisdiction was possible because the plaintiffs had fraudulently joined Owenby. Judge Vollmer held that Owenby was not fraudulently joined and remanded the action to Baldwin County Circuit Court. *Lane v. Champion Int'l Corp.*, 827 F.Supp. 701, 706–10 (S.D.Ala.1993) (hereinafter Order of June 14).

Since then there have been several occurrences. On October 19, 1993, the plaintiffs amended their second amended complaint to state "each class member is individually seeking damages, including compensatory and punitive damages, in an amount less than $50,000." Plaintiffs' Amendment to the Second Amended Complaint (hereinafter the Amendment).[4] In so doing, the plaintiffs reduced their *ad damnum* considerably but

---

**1.** On August 24, 1993, Robert C. Donnenwirth, a citizen and resident of Alabama, became a plaintiff in this action. Plaintiffs' Second Amended Complaint. On September 9, 1993, Elebash was dropped as a plaintiff. Plaintiffs' Third Amended Complaint.

**2.** Removal is governed by 28 U.S.C. § 1441 et seq. (1988).

**3.** 28 U.S.C. § 1332(a)(1) (1988). 28 U.S.C. § 1332(c) states that "[f]or the purposes of this section ... a corporation shall be deemed to be a citizen of any State by which it has been incorporated and of the State where it has its principal place of business[.]" 28 U.S.C. § 1332(c) (1988). Champion is a New York corporation with its principal office and place of business in Connecticut. For diversity purposes, Champion is a citizen of New York and Connecticut. Its having a paper mill in Florida and being licensed to do business in Alabama do not make it a citizen of either of those states for diversity purposes, so Owenby was the only nondiverse defendant.

**4.** This is significant because of 28 U.S.C. § 1332(a), which states, "The district courts shall have original jurisdiction of all civil actions where the matter in controversy exceeds the sum or value of $50,000, exclusive of interest and costs, and is between ... citizens of different States." 28 U.S.C. § 1332(a)(1) (1988). The aggregation of separate and distinct claims would not confer subject matter jurisdiction in a diversity case. Allowing such aggregation would undercut the purpose of the jurisdictional amount requirement, namely the limiting of federal jurisdiction in diversity cases. *Snyder v. Harris*, 394 U.S. 332, 339–40, 89 S.Ct. 1053, 1058, 22 L.Ed.2d 319, 325–26 (1969), *reh'g denied*, 394 U.S. 1025, 89 S.Ct. 1622, 23 L.Ed.2d 50.

Four years after *Snyder*, the Supreme Court applied it to a diversity-based class action in which the plaintiffs, owners of property along Lake Champlain in Vermont, alleged that the paper mill of defendant International Paper Company, a New York corporation, improperly polluted Ticonderoga Creek, which flows into Lake Champlain, and Lake Champlain itself. The plaintiffs alleged the pollution damaged the value and utility of their property. *Zahn v. International Paper Co.*, 414 U.S. 291, 292–93, 94 S.Ct. 505, 507, 38 L.Ed.2d 511, 514 (1973). The Court distinguished two types of class actions:

When two or more plaintiffs, having separate and distinct demands, unite for convenience and economy in a single unit, it is essential that the demand of each be of the requisite jurisdictional amount; but when several plaintiffs unite to enforce a single title or right, in which they have a common and undivided interest, it is enough if their interests collectively equal the jurisdictional amount.

*Id.* at 294, 94 S.Ct. at 508, 38 L.Ed.2d at 515, quoting *Troy Bank of Troy, Indiana v. G.A. Whitehead & Co.*, 222 U.S. 39, 32 S.Ct. 9, 56 L.Ed. 81 (1911). The Court held that *Snyder* applied to *Zahn*. *Id.* at 302, 94 S.Ct. at 512, 38 L.Ed.2d at 519.

At the time of removal of the case *sub judice*, the Baldwin County Circuit Court was considering whether to certify this action as a class action. Although no court has certified a class, the facts of this action are otherwise so similar to those of *Zahn* that it, and therefore *Snyder*, clearly prohibit aggregating the claims of the plaintiffs before this court to confer diversity jurisdiction. That does not eliminate the possibility of conferring the subject-matter jurisdiction of this court by other means.

did not otherwise change their allegations. Their original complaint claimed actual, compensatory, and punitive damages of $250 million for negligence and $500 million for each of the following: wantonness; breach of duty to warn; fraud, misrepresentation and deceit; nuisance; trespass; battery; assault; negligent infliction of emotional distress; intentional infliction of emotional distress; outrage; and strict liability. The plaintiffs also sought interest, costs, and attorneys fees, but interests and costs are irrelevant in computing the amount in controversy under 28 U.S.C. § 1332(a).

In another astonishing move, the plaintiffs' Amendment dropped all the requests for injunctive relief which the plaintiffs had made in their complaint. They had requested preliminary and permanent injunctions to stop the defendants from using, producing, creating, manufacturing, and releasing into Eleven Mile Creek and Perdido Bay, any toxic substances or other pollutants. They had also requested injunctions to force the defendants to clean up and remove from Eleven Mile Creek and Perdido Bay all toxins and other pollutants they had released there.

It is curious that the plaintiffs filed the Amendment one week after defendant Champion revealed to them its belief that if defendant Owenby were dismissed, the voluntary/involuntary rule *would not* prohibit Champion from again removing the action to federal court. *See* Letter of Chason and Chason, P.C., attorneys for defendant Champion, to the Honorable Charles C. Partin, Circuit Court Judge, Baldwin County (Oct. 12, 1993) (copy sent to the plaintiffs). It is curious because an affidavit submitted by the defense and unrefuted by the plaintiffs suggests that on October 1, 1993, before the plaintiffs reduced the *ad damnum*, the plaintiffs believed the voluntary/involuntary rule *would* bar removal of this action if defendant

Owenby were dismissed. *See* Affidavit of Katherine Armstrong, attorney for defendant Champion (Nov. 8, 1993). Then on October 19, 1993, after receiving a copy of the letter to Judge Partin, the plaintiffs filed the Amendment, reducing the *ad damnum* considerably and dropping all requests for injunctive relief. They now vigorously assert the Amendment bars removal.

It is also curious that the Amendment appears not to have been the first amendment which the plaintiffs considered filing. On October 18, 1993, the plaintiffs served on defendant Champion, but did not file in Baldwin County Circuit Court, an amendment (not *the* Amendment) reducing the *ad damnum* to less than $50,000 per class member but not mentioning injunctive relief. Letter of Richard A. Freese to G. Sage Lyons, John Earle Chason, Barbara Wrubel, and Louis C. Woolf (Oct. 19, 1993). Enclosed with the October 19th letter was a copy of the Amendment, the one actually filed, which in addition to reducing the *ad damnum*, dropped the plaintiffs' requests for injunctive relief. This is curious because, in computing the amount in controversy in diversity actions seeking injunctive relief, some courts have considered the cost to the defendant of complying with injunctions. *See Justice v. Atchison, Topeka & Santa Fe Ry. Co.*, 927 F.2d 503, 505 (10th Cir.1991); *but see Indianer v. Franklin Life Ins. Co.*, 113 F.R.D. 595, 605 (S.D.Fla.1986). It appears the plaintiffs reasoned that if this court were inclined to use the so-called "defendant's viewpoint," the amount in controversy might exceed the diversity-jurisdiction requirement of 28 U.S.C. § 1332(a). By their Amendment, the plaintiffs eliminated any consideration of injunctive relief.

Another curiosity has more recently presented itself. One of the named plaintiffs has expressed goals for this lawsuit [5] which

---

**5.** Deposition of plaintiff Robert C. Donnenwirth (Dec. 14, 1993). The questions (Q) by attorneys for Champion and answers (A) from Donnenwirth were as follows:

Q: Now, how do you think this lawsuit is going to make Champion stop polluting the bay?
A: Well, I hope that it makes them change their process to take the chlorine out, to use— I'm sure there's technology available to manu-

facturer [sic] white paper without the chlorinization, and the toxins, and dioxin that's manufactured by Champion Paper Company. I don't want them to go out of business. I just want them to change their process to stop the pollution....
Q: You want a Court order telling Champion that you [Champion] have got to change your process? ...
A: Right....

can be achieved with certainty only through injunctions, despite the fact that the plaintiffs, via the Amendment, dropped their requests for injunctive relief, requests which, again, might have conferred the subject-matter jurisdiction of this court. The plaintiffs contend that a massive monetary award alone, with no injunctions, would force Champion to clean up Perdido Bay. That is not necessarily true. If Champion lost or settled such a lawsuit, it could pay the plaintiffs and then not choose to spend the additional sums on the bay.

Since the Circuit Court of Baldwin County dismissed defendant Owenby from this action on November 4, 1993, there has been complete diversity. The named plaintiffs are citizens of Florida and Alabama, and defendant Champion is a citizen of New York and Connecticut.[6] Champion then filed its November 8, 1993, notice of removal (tab 1), which has brought this state-court action to federal court a second time.

## 2. Transfer

■ The first motion before the court is the plaintiffs' motion to transfer this action to Judge Vollmer. The plaintiffs contend that since Judge Vollmer is already familiar with the complex facts and procedural history of this action from having entered the Order of June 14, it should be transferred to him. The defendant counterargues that the issues now presented are different from those presented to Judge Vollmer. Although the issues do overlap to some extent, the issues are not so similar that they justify transfer in these particular circumstances.

> Q: Is that what we have been talking about, that you are wanting the Court to order Champion to change its process and clean up?
> A: As I understand it, that is, but the exact, technical wording of it, I will leave up to my attorneys to decide just what procedures are required. After all, that's the reason we hired them.
> Q: ... And that's your motivation in being in this lawsuit....
> A: Basically, yes. We're trying to clean up the—stop Champion from polluting—continuing to pollute the bay....
> Q: ... Do you know that you have now dismissed those very portions of this lawsuit? ...
> A: I will have to say at this point no.

## 3. Removal

### 3(a). The Voluntary/Involuntary Rule

The second motion before the court is the plaintiffs' motion to strike the Amendment, which could affect diversity jurisdiction. Also tied to the diversity-jurisdiction issue is the voluntary/involuntary rule.

The court notes that the right of removal is statutory and must be construed "to limit federal jurisdiction and prevent encroachment on the state court's right to decide cases properly brought before it, especially in diversity cases. The removing defendant or defendants bear the burden of establishing the right to invoke federal jurisdiction." *Harris v. Huffco Petroleum Corp.*, 633 F.Supp. 250, 253 (S.D.Ala.1986) (citations omitted).

■ The court will first consider the voluntary/involuntary rule. In objecting to this court's diversity jurisdiction, the plaintiffs assert that on June 14, 1993, it was "*held* that 'this court is aware that Champion would be unable to remove this action if the state court, on remand, were to grant Owenby's motion to dismiss.'" Plaintiffs' Motion to Transfer at 2, quoting Order of June 14 at 705, citing *Weems v. Louis Dreyfus Corp.*, 380 F.2d 545, 545–49 (5th Cir.1967) (discussing the voluntary/involuntary rule) (emphasis added).[7] The defendant, by contrast, asserts that this sentence from the Order of June 14 is *dictum*, not a holding, and that the question of what would happen if Owenby were dismissed was not before the court then.

A reading of the entire Order of June 14 reveals that the court did not decide what

> Q: Did you know until just now that those portions seeking injunction have been dismissed?
> A: No, I didn't.
> Q: Did you just learn it from me?
> A: Yes.
> *Id.* at 30:21–35:14.

6. *Supra* note 1 and accompanying text; *supra* note 3.

7. Decisions by the United States Court of Appeals for the Fifth Circuit entered by September 30, 1981, are binding in the Eleventh Circuit. *Bonner v. City of Prichard*, 661 F.2d 1206, 1207 (11th Cir.1981).

would happen if Owenby were dismissed.[8] In remanding the action, the court considered only whether Owenby had been fraudulently joined. Concluding he had not been, the court remanded the action. Order of June 14 at 705–10. In any event, this aspect of the Order of June 14 is no longer relevant to removal because, as will be seen, it has been superseded by the application of an eleventh circuit decision to the Baldwin County Circuit Court's dismissal of Owenby.

■ After Owenby was dismissed, Champion again removed this action to federal court. Under the voluntary/involuntary rule, a defendant may remove a qualified diversity action from state to federal court after the dismissal of a nondiverse defendant only if the plaintiff voluntarily dismissed the nondiverse defendant. *See Weems,* 380 F.2d at 547–49. Under an exception to this rule, a qualified diversity action may be removed after the dismissal of a nondiverse defendant when the plaintiff did not voluntarily dismiss the nondiverse defendant, *if* the involuntarily dismissed defendant was fraudulently joined in the first place. *Insinga v. La Bella,* 845 F.2d 249, 254 (11th Cir.1988). The eleventh circuit held that "a trial court's finding that it lacks jurisdiction over a resident defendant is akin to a finding of fraudulent joinder of that defendant in that it involves a determination by the court that the resident defendant was never properly before the court[.]" *Id.*

### 3(b). Applying the Rule and its Exception

In this action, the plaintiffs did not voluntarily dismiss Owenby, so this action may be removed to federal court under the exception to the voluntary/involuntary rule if (1) Owenby was fraudulently joined, and (2) the action is otherwise qualified for removal.

The Circuit Court of Baldwin County did indeed find that it lacked in personam jurisdiction over Owenby when it dismissed him on November 4, 1993. *Lane v. Champion Int'l Corp.,* Case No. CV–92–781.80 (Circuit Court of Baldwin County, Ala., Nov. 4, 1993). Therefore, under *Insinga,* defendant Owenby was fraudulently joined. The *Insinga* analysis from the Eleventh Circuit supersedes this court's earlier holding[9] that Owenby was not fraudulently joined. However, whether this action is otherwise qualified for diversity jurisdiction is a more complicated issue. Under 28 U.S.C. § 1332(a), district courts have subject-matter jurisdiction over civil diversity actions "where the matter in controversy exceeds the sum or value of $50,000, exclusive of interests and costs." 28 U.S.C. § 1332(a) (1988). Had the plaintiffs filed the Amendment *after* the defendant removed the action to federal court, it is clear that diversity jurisdiction would exist. *St. Paul Mercury Indemnity Co. v. Red Cab Co.,* 303 U.S. 283, 293, 58 S.Ct. 586, 592, 82 L.Ed. 845, 850–51 (1938).[10] This issue is more complicated

---

8. Although the court stated it was "aware that Champion would be unable to remove this action if the state court, on remand, were to grant Owenby's motion to dismiss," the court did not decide the issue. The phrase "aware that" indicates, in this context, the court was stating a belief about a hypothetical issue without making a decision on the issue itself. This is also indicated by the use of the present conditional tense ("Champion *would* be unable") and the subjunctive mood ("if the state court, on remand, *were* to grant Owenby's motion to dismiss") when referring to the prospective dismissal of Owenby. Moreover, this language is in a paragraph in which the court hypothesizes about what will happen "even in the *unlikely event* that the state court determines that Owenby is due to be dismissed for lack of personal jurisdiction," Order of June 14 at 705 (emphasis added), a prediction which was later revealed to have been inaccurate.

9. *See supra* text accompanying note 8.

10. "[E]vents occurring *subsequent to* removal which reduce the amount recoverable, whether beyond the plaintiff's control of the result of his volition, do not oust the district court's jurisdiction once it has attached.... We think this well established rule is supported by ample reason. *If the plaintiff could, no matter how bona fide his original claim in the state court, reduce the amount of his demand to defeat federal jurisdiction the defendant's supposed statutory right of removal would be subject to the plaintiff's caprice.* The claim, whether well or ill founded in fact, fixes the right of the defendant to remove, and *the plaintiff ought not to be able to defeat that right and bring the cause back to the state court at his election.* If he does not desire to try his case in the federal court he may resort to the expedient of suing for less than the jurisdictional amount, and though he would be justly entitled to more, the defendant cannot remove." *St. Paul,* 303 U.S. at 293–94, 58 S.Ct. at 592–93, 82 L.Ed. at 850–51 (emphasis added).

The seventh circuit found humor in a recent tort action in which a plaintiff who had claimed

when, as here, the plaintiffs reduce the *ad damnum before* removal.

### 3(b)(1). The Motion to Strike the Amendment

Despite that complication, Champion suggests that the "good-faith" requirement of *St. Paul* should apply in this action, even though the Amendment was filed before removal. Champion in effect suggests that the claim in the Amendment should control only "if the claim is apparently made in good faith." *See id.* at 288, 58 S.Ct. at 590, 82 L.Ed. at 848.

Champion previously also suggested that the plaintiffs did not file the Amendment in good faith and moved that the court strike the Amendment because it was a "sham pleading," one designed to allow the plaintiffs to avoid the subject-matter jurisdiction of this court.[11] If this court struck the Amendment, the *ad damnum* would again be above the statutory amount; diversity jurisdiction would then exist, and this action would be qualified for removal. To support its contention that the plaintiffs were trying in bad faith to avoid federal subject-matter jurisdiction, Champion cited the actions they have taken since the Order of June 14. It assert-

ed the amount in controversy was the hundreds of millions of dollars sought in the pre-Amendment complaint, not the fraction thereof sought in the Amendment. The plaintiffs contend that striking the Amendment ignores the principle that the plaintiff is "master of his complaint." They cite an Alabama civil procedure rule permitting amendment of complaints until 42 days before trial,[12] *St. Paul, and Lindsey v. Alabama Tel. Co.,* 576 F.2d 593 (5th Cir.1978).[13]

### 3(b)(2). Alternatives to Striking the Amendment

Absent a striking of the Amendment, the court must consider how to treat the *ad damnum* reduction.

One approach is to hold that the requirements for diversity jurisdiction in this case must be met at both the commencement of the action and the time of removal. *Sayers v. Sears, Roebuck and Co.,* 732 F.Supp. 654, 656 (W.D.Va.1990).[14] However, *Sayers* combined with the new clause of the removal statute prohibiting removal of a diversity-based action to federal court more than one year after commencement of the action in state court[15] would allow the plaintiffs to do

---

damages exceeding $50,000 before and upon removal later claimed his damages were less than that amount. "[A]t oral argument we had the privilege of witnessing a comic scene: plaintiff's personal injury lawyer protests up and down that his client's injuries are as minor and insignificant as can be, while attorneys for the [defendant] manufacturer paint a sob story about how plaintiff's life has been wrecked." *Shaw v. Dow Brands, Inc.,* 994 F.2d 364, 366 (7th Cir.1993), *reh'g, en banc, denied* (7th Cir. July 13, 1993).

**11.** Champion now surprisingly urges the court to hold otherwise. *See infra* text accompanying notes 22–23.

**12.** Ala.R.Civ.P. 15(a) (1992).

**13.** "[A]n amendment in the state court reducing the claim below the jurisdictional amount *before* removal is perfected is effective to invalidate removal and requires a remand of the cause[.]" *St. Paul,* 303 U.S. at 294 n. 25, 58 S.Ct. at 593 n. 25, 82 L.Ed. at 851 n. 25 (emphasis added). *Lindsey,* citing *St. Paul,* remanded an action when the amount-in-controversy per plaintiff could not be calculated, because the number of plaintiffs in the class was unclear.

In the case *sub judice,* no class has been certified but one might be, so the number of plaintiffs

is uncertain. In that respect, the facts of this case are similar to those of *Lindsey.* However, *St. Paul* and *Lindsey* were decided before the one-year bar of 28 U.S.C. § 1446(b) was enacted in 1988. The possible effect of the one-year bar in this action leads the court to inquire whether the bar comports with a constitutional purpose of diversity jurisdiction. If it does not, the Constitution may override the language of *St. Paul* which the plaintiffs cite. In addition, the procedural history of this action raises questions about whether the Amendment was filed in "good faith." *See infra* notes 15–21 and accompanying text.

**14.** Among the cases *Sayers* cites is *Maseda v. Honda Motor Co., Ltd.,* 861 F.2d 1248 (11th Cir. 1988). The *Maseda* court stated that the propriety of removal is usually determined when the removal petition is filed; however, it did so in a discussion of jurisdiction over a cross claim after a main claim was dismissed, a discussion unrelated to the facts of the case *sub judice.* Moreover, there is no indication in *Maseda* of actions like those the plaintiffs in this action have taken since the Order of June 14. *Id.* at 1253.

**15.** "[A] case may not be removed on the basis of jurisdiction conferred by section 1332 of this title more than 1 year after commencement of the action." 28 U.S.C. § 1446(b) (1988).

what defendant Champion expressly fears: wait for a remand to state court and increase the *ad damnum* again when it is too late for removal. Since the first anniversary has already passed, this approach would lock Champion out of federal court even if the current named plaintiffs or other plaintiffs later increase the amount in controversy back to hundreds of millions of dollars. Permitting this would defeat one of the purposes of diversity jurisdiction: to provide a fairer forum for financially more significant diversity cases. The framers of the Constitution knew that rivalries among regions of the country could hinder the chances of just results when non-resident parties faced resident parties in state courts. To reduce this risk, the framers created federal diversity jurisdiction.[16] *C.f., Grassi v. Ciba–Geigy, Ltd.,* 894 F.2d 181, 185 (5th Cir.1990).

> Congress has created diversity jurisdiction and the right of removal under 28 U.S.C. § 1441 for the purpose of protecting non-resident litigants from local prejudice. Although there are many, including (or especially) members of the federal judiciary, who question the continuing need for its existence, removal based on diversity of citizenship is a right conferred by Congress, the need for which 'may well be greatest when the plaintiff tries hardest to defeat it.' ... We have recognized the authority of federal courts to protect their own jurisdiction.

*Id.* (citations omitted).

The seventh circuit has considered and rejected an alternative to simple remand when the plaintiff reduces his *ad damnum* after removal. *In the Matter of Shell Oil Company,* 970 F.2d 355 (7th Cir.1992). In *Shell Oil,* the district court remanded a diversity-based action when the plaintiff stipulated that if he won, he would not collect more than $50,000. The seventh circuit rejected this as inconsistent with *St. Paul. Id.* at 356; *see supra* note 10. In the case *sub judice,* the plaintiffs reduced their *ad damnum* before removal, so *Shell Oil*'s rejection of such a stipulation does not apply.

The sixth circuit has articulated, and district courts in the seventh circuit have em-

ployed, a third approach to use when the defendant seeks to remove an action in which the plaintiff claims less than the amount-in-controversy requirement. In this court's view, the sixth circuit recognized situations in which plaintiffs' careful maneuvering could defeat the above-stated constitutional purpose of diversity jurisdiction: plaintiffs could claim in their complaint

> an amount lower than the federal amount-in-controversy requirement in an attempt to defeat federal jurisdiction, while actually seeking and perhaps obtaining damages far in excess of the federal requirement. Thus, courts have considered allowing removal where the defendant establishes a "substantial likelihood" or "reasonable probability" that the plaintiff intends to seek damages in excess of the federal amount-in-controversy requirement. *See, e.g., Vail v. Orkin Exterminating Co.,* No. 91 C 3053, [1991 WL 134275, at 2] 1991 U.S.Dist. LEXIS 9633, at * 6 (N.D.Ill. July 12, 1991) (employing the "substantial likelihood" test in a case where plaintiff's complaint included an ad damnum clause limiting damages to an amount below the federal requirement); *Cole v. Freightliner Corp.,* No. 91 C 733, [1991 WL 42163, at 2] 1991 U.S.Dist. LEXIS 3408, at * 3–* 4 (N.D.Ill. Mar. 21 [*sic*], 1991) (using the "reasonable probability" test in a case where plaintiff's complaint specifically prayed for damages less than the federal requirement).

*Gafford v. General Elec. Co.,* 997 F.2d 150, 158 (6th Cir.1993).

### 3(c). Discussion

■ The motion to strike the Amendment presents this court with a difficult choice. The court is mindful of the plaintiffs' prerogative to be masters of their complaint. If they wish to claim less than $50,000 apiece and drop their requests for injunctive relief, this court does not wish to force them to do otherwise and thereby lock them inside federal court. The court is also mindful of the constitutional purposes of diversity jurisdiction and of the defendant's concern that the

16. *See* U.S. Const.Article III, § 2.

plaintiffs could again amend the *ad damnum* when the one-year bar of 28 U.S.C. § 1446(b) would prohibit removal. Properly amending the *ad damnum* is the plaintiffs' prerogative, but it is not their prerogative to evade the constitutionally proper subject-matter jurisdiction of the court. Given the procedural history of this action,[17] the jurisdictional shell game which the plaintiffs seem to be playing in an effort to avoid federal subject-matter jurisdiction,[18] and the complex and expensive environmental issues involved, this court is persuaded that there is a "substantial likelihood" or a "reasonable probability" that the plaintiffs (meaning the current named plaintiffs), future named plaintiffs, *or* members of a class, if a court certifies one, will seek more than the federal amount-in-controversy requirement if this case is remanded to state court. The plaintiffs contended at a January 6, 1994, hearing before this court that they have "no intention" to amend the *ad damnum* again; nevertheless, it would tax credulity to suggest and it would be naive to believe that upon remand neither they nor anyone else would.[19] Indeed, counsel acknowledged at the hearing that subsequent change in circumstance may well dictate a change in the *ad damnum* claim.[20]

Despite the "substantial likelihood" or "reasonable probability" that upon remand some plaintiffs would seek more than the federal amount-in-controversy requirement, this court is not convinced the approaches of *Vail* and *Cole*, as articulated in *Gafford*, are appropriate. A court either has subject-mat-ter jurisdiction or it does not. A federal court in a diversity action does not have subject-matter jurisdiction if the amount in controversy is less than the statutory amount. In this action, it is the Amendment which brings the amount in controversy below that amount. 28 U.S.C. § 1332(a) (1988).

### 3(d). Recent Events

Also at the January 6th hearing, the court articulated the possibility of remanding this action under the condition that the amount in controversy in state court not exceed the statutory amount which suffices for diversity jurisdiction in federal court. In a January 7, 1994, letter to the court, plaintiffs counsel stated,

> After discussing this matter in great detail with my clients and obtaining their consent, I can now represent to the Court that if this action is remanded, the plaintiffs *will not* amend the complaint to increase their claim for damages above the $50,000 jurisdictional amount or reassert their claims for injunctive relief.

They offered to supplement the record with affidavits stating the same. Letter of Peter A. Grammas, attorney for the plaintiffs, to the Honorable William Brevard Hand (Jan. 7, 1994) (emphasis added).

The January 7th letter overrides their statement at the January 6th hearing that they had "no intention" to amend the *ad damnum* but that they could not promise not to amend the *ad damnum*.[21] When the

---

17. *Supra* notes 4–6 and accompanying text.

18. The plaintiffs have recently made no secret of their intention to seek remand of this action. On November 22, 1993, they moved that this action be transferred to Judge Vollmer, who previously remanded this lawsuit to state court, "so that he can once again make a determination on plaintiffs' soon to be filed motion to remand." Plaintiffs' Motion to Transfer (tab 5), 3. On December 17, 1993, the plaintiffs conceded that they filed the Amendment "in order to have this action resolved in state court." Plaintiffs' Reply to Defendant's Reply to Plaintiffs' Response to Motion to Strike (tab 11), 3. They made similar statements at the January 6, 1994, hearing. On January 18, 1994, the plaintiffs filed their motion to remand (tab 14).

19. Other steps, such as adding another nondiverse named plaintiff or another nondiverse de-fendant, which under ordinary circumstances would deprive a federal court of diversity jurisdiction, are also imaginable.

20. Certification of a class in this action might increase the amount in controversy to more than $50,000 per plaintiff. At the January 6th hearing, the plaintiffs claimed that any prospective class members who sought more than $50,000 could opt out of any class the plaintiffs form and sue on their own behalf. Champion said that would leave it defending itself in two actions instead of one.

21. They had insisted in documents filed with this court that such a promise would violate their duty as class representatives. By their January 7th letter, the plaintiffs apparently concede at best that their previous assessment of their duty as prospective class-representatives was inaccurate.

plaintiffs refer to "their "claim for damages" and "their claims for injunctive relief," they agree to limit not only their own damages and whatever injunctions they as individuals might desire but also their own claim. Their claim is "on behalf of themselves and others similarly situated," and their Amendment limits "what each class member is individually seeking." It follows that the plaintiffs and their counsel represent to this court that upon remand they will never amend the *ad damnum* to increase any claim for damages above the $50,000 jurisdictional amount or reassert any claims for injunctive relief. It should be noted that although the plaintiffs state clearly and unequivocally that they will not amend the *ad damnum*, they do not—indeed they cannot—state that no one else will amend the *ad damnum*. Whether someone else would be allowed to amend the *ad damnum* is a question not before this court.

Champion responded (tab 15) to the plaintiffs' letter and their motion to remand by requesting that the plaintiffs sign and notarize a stipulation rather than affidavits. It offered not to oppose remand at this time if the plaintiffs signed an appropriate stipulation.[22] When the plaintiffs declined to sign Champion's stipulation, Champion submitted a supplemental response (tab 16) to the motion to remand. It urged the court to "rule on its motion to strike and Plaintiffs' motion to remand based upon the prior representations made by Plaintiffs' counsel"; moreover, Champion surprisingly proposed that the court issue an order finding, based on the January 7th letter, that the Amendment "is not a sham pleading" and that Champion "has indicated that in light of Plaintiffs' agreement to limit the amount of damages and scope of relief sought, it will *not* oppose Plaintiffs' Motion to Remand" (emphasis added).[23]

## 4. Conclusion

Since both the plaintiffs and Champion now seek remand of this action, the court need not decide whether, in light of the one-year bar of 28 U.S.C. § 1446(b), the "good-faith" requirement of *St. Paul* applies to pre-removal *ad damnum* amendments. The court also need not decide whether the plaintiffs' actions provide sufficient evidence to establish a jurisdictional shell game, or whether the Amendment was "a sham pleading" or was filed in "good faith." Because this action was filed in state court on November 9, 1992, and removed on November 8,

**22.** One difference between the plaintiffs' offer and Champion's proposed stipulation was that under the stipulation, the plaintiffs would agree to prohibit themselves and each member of any prospective class from recovering more than is set forth in the Amendment. Another difference was that under the stipulation, the plaintiffs would agree not raise the one-year bar of 28 U.S.C. § 1446(b) should Champion again remove this action to federal court. Champion's Response to Plaintiffs' Motion to Remand (tab 15).

**23.** While acknowledging their representation to this court in the January 7th letter, the plaintiffs now reiterate the position they took at the January 6th hearing: that they have

> no intention, present or otherwise of amending the complaint. However, plaintiffs cannot, and will not, represent that if this putative class is certified, they will not, at some future date, seek to amend the complaint based on presently unknown circumstances. Plaintiffs simply cannot make such an absolute commitment at this early stage of this lawsuit, and the law does not require one.

Plaintiffs' Reply to Champion's Response to the Motion to Remand (tab 17), 3.

The plaintiffs, again meaning the current named plaintiffs, cannot have it both ways. The court is concerned that this is another round in a jurisdictional shell game. Their January 7th letter did, without caveat, "absolutely commit" the plaintiffs and their counsel upon remand never to amend the *ad damnum* to increase any claim for damages above the $50,000 jurisdictional amount or reassert any claims for injunctive relief. Following that commitment, Champion agreed to a remand of this action, so the court will not allow the plaintiffs to abandon their commitment with their "no intention … however" language.

> The plaintiffs further state,
>
> If the Court believes that plaintiffs have committed, *on behalf of an uncertified class,* never to seek an amendment to the complaint under any circumstances or regardless of what future illegal conduct Champion commits, then plaintiffs apologize for that is not their position. Plaintiffs have simply stated that they have no intention to reassert the claims for relief which they previously abandoned.

*Id.* at 4 (emphasis added). Again, the January 7th letter clearly and unequivocally committed the current named plaintiffs. The plaintiffs did not—they could not—state that no one else will amend the complaint.

734

1993, the one-year bar of 28 U.S.C. § 1446(b) did not prevent removal. The constitutionality of the one-year bar is not before the court.

Accordingly, the court **DENIES** the plaintiffs' motion to transfer this action to Judge Vollmer. There being no opposition to remand, and the current named plaintiffs and their counsel having committed themselves upon remand never to amend the *ad damnum* to increase any claim for damages above the $50,000 jurisdictional amount or reassert any claims for injunctive relief, the court **DENIES** Champion's motion to strike the Amendment. This action does not now qualify for removal; therefore, the court **GRANTS** the plaintiffs' motion to remand to the Circuit Court of Baldwin County, Alabama. The clerk is **DIRECTED** to effectuate this transfer and provide the state court with a copy of this order so that court might understand the parties' agreements.

Should any of the issues in this action arise in this court again, for example upon subsequent removal of this action, or upon the facts of this case giving rise to another action, the clerk is **DIRECTED** to assign the action to this judge. Such an assignment would be consistent with the plaintiffs' recommendation, in their motion to transfer, that a judge familiar with the complex facts and procedural history of an action consider them if they again come to the court's attention.

**SO ORDERED.**