PUBLISHED

**UNITED STATES COURT OF APPEALS**

**FOR THE FOURTH CIRCUIT**

BRIAN G. WEST,
Plaintiff-Appellant,

v.

No. 95-1745

CLARKE MURPHY, JR. SELF EMPLOYED
PENSION PLAN; CLARKE MURPHY, JR.,
Defendants-Appellees.

Appeal from the United States District Court
for the District of Maryland, at Baltimore.
Joseph H. Young, Senior District Judge.
(CA-93-95-Y)

Argued: April 4, 1996

Decided: November 5, 1996

Before WILKINSON, Chief Judge, ERVIN, Circuit Judge, and
BUTZNER, Senior Circuit Judge.

_____

Affirmed by published opinion. Senior Judge Butzner wrote the opin-
ion, in which Chief Judge Wilkinson and Judge Ervin joined.

_____

**COUNSEL**

**ARGUED:** Paul Frederick Newhouse, Towson, Maryland, for Appel-
lant. Robert Richardson Bowie, Jr., BOWIE & JENSEN, Towson,
Maryland, for Appellees.

_____

**OPINION**

BUTZNER, Senior Circuit Judge:

In this case we must determine whether a pension plan established by Clarke Murphy, Jr., was an employee plan in which Brian G. West was entitled to benefits under Title I of the Employment Retirement Income Security Act of 1974 (ERISA), 29 U.S.C. §§ 1001 et seq. West alleged that he was eligible to participate in the plan as an affiliated employee of Murphy. He sought a portion of the plan's accrued benefits along with statutory penalties. After a bench trial, the district court dismissed West's complaint. We accept the district court's findings of historical fact, and we affirm its judgment. We affirm, however, for a somewhat different reason. We find that, because West was never employed by Murphy, he does not qualify as a participant in Murphy's plan.

Jurisdiction is based on 28 U.S.C. § 1331 (federal question), 29 U.S.C. § 1132(a)(1)(B) (civil enforcement of ERISA), and 28 U.S.C. § 1291 (final decision). The appropriate standards of review are: matters of law, de novo; factual findings, clearly erroneous; imposition of penalties and award of attorney's fees, abuse of discretion.

I

On January 1, 1986, Murphy, Theodore J. Potthast, Jr., P.A., and Koehler, West & Associates, Chartered, formed a partnership, known as White, Page & Lentz (WPL), for the purpose of practicing law. Murphy joined WPL in his individual capacity. Koehler and Potthast held their partnership interests through professional corporations. West, who was an employee of Koehler, West & Associates at the time of WPL's formation, became an employee of WPL.

In December 1986, Murphy created a pension benefit plan with a retroactive effective date of January 1, 1986. The plan documents designated Murphy as plan sponsor, administrator, trustee, employer, and sole-proprietor. Murphy did not notify WPL or West of the plan's existence, and he was responsible for all contributions to the plan.

The district court found that in mid-December 1986, Murphy, Potthast, and Koehler agreed to dissolve the WPL partnership as of January 1, 1987. The court found that the partnership was dissolved by July 1987. From July 1987 until 1990, the former partners continued to share office space, equipment, and expenses, but not profits. To facilitate the sharing of expenses, WPL maintained a separate accounting system until 1988. WPL also filed partnership tax returns until 1988. In addition, the former partners continued to use common malpractice insurance policies and the WPL letterhead until 1990.

In 1990, Murphy terminated the plan. In 1991, West contacted Murphy to request copies of the plan documents and an appraisal of his rights under the plan. Murphy, acting as plan administrator, notified West that he had not been eligible to participate in the plan because he had never been an employee of Murphy.

Murphy argued that during 1986, when WPL existed, he had had no separate employees. Murphy claimed that from 1987 to 1990, he had been a sole-proprietor with no employees. West contended that the WPL partnership had existed until 1990, and that he had been an affiliated employee of Murphy until that time. He alleged that as an affiliated employee he had been entitled to participate in the plan.

The district court found that after January 1, 1987, it was reasonable for Murphy to conclude that WPL had dissolved for ERISA purposes. Continuing, the court held that Murphy, therefore, did not abuse his discretion as plan administrator in determining that West had not been an eligible participant after December 31, 1986. With respect to West's eligibility during the period that WPL existed (January 1, 1986, until December 31, 1986), the court held that West had failed to prove that he would have participated in the plan had he known about it.

II

We begin our analysis by examining the language of the statute. See Madonia v. Blue Cross & Blue Shield of Virginia , 11 F.3d 444, 446 (4th Cir. 1993). The essence of an employee pension benefit plan covered by ERISA is an employer-employee relationship. Stripped to its bare essentials, the gist of ERISA's definition of such a plan is the

3

employer's establishment or maintenance of a plan for the retirement or income deferral of the employer's employees. See § 1002(2)(A).

In order to be a participant in an ERISA plan, an individual must be an "employee or former employee of [the] employer." § 1002(7). Although the Supreme Court has elaborated on the definition of a participant, the Court has retained the requirement that the individual be an employee or former employee. Firestone Tire and Rubber Co. v. Bruch, 489 U.S. 101, 117-18 (1989). ERISA defines an employee as an "individual employed by an employer." § 1002(6). The Supreme Court has also elaborated on this definition by adopting "a common-law test for determining who qualifies as an `employee' under ERISA . . . ." Northwestern Mut. Ins. Co. v. Darden , 503 U.S. 318, 323-24 (1992).

Pursuant to statutory mandate, the Secretary of Labor has issued regulations clarifying these definitions and filling in the gaps left by Congress. See § 1135; see also 29 C.F.R. § 2510.3-3 (1995). The regulations provide that Title I and its fiduciary and enforcement provisions apply only to employee benefit plans. The regulations explicitly exclude "any plan, fund or program, other than an apprenticeship or other training program, under which no employees are participants covered under the plan . . . ." 29 C.F.R. § 2510.3-3(b); see Schwartz v. Gordon, 761 F.2d 864, 867-69 (2d Cir. 1985).

III

We must also examine both the express terms of Murphy's Plan and the surrounding circumstances to determine whether West was a covered employee under the plan. Cf. Donovan v. Dillingham, 688 F.2d 1367, 1373 (11th Cir. 1982) (en banc). Murphy's plan designates who the employer is. The plan was entitled the "Clarke Murphy, Jr. Self-Employed Pension Plan and Trust." Section 1.21 of the plan defines "employer" as Clarke Murphy, Jr.,"and any entity which shall have assumed in writing the obligations of this Plan. . . ." It is undisputed that neither WPL nor any other entity assumed the obligations of the plan. In addition, the plan documents designated Murphy as employer, administrator, sponsor, trustee, and sole proprietor. §§ 1.05, 1.42, 1.59.

4

The plan also defines the term employee for purposes of the plan. According to § 1.19, an "employee" is "any individual employed by the Employer either as a common-law employee or a Self-Employed Individual." It is undisputed that West was never employed by Murphy in any capacity. At all pertinent times he was employed by WPL. Although WPL had existed for almost a year by the time Murphy created the plan, neither WPL nor any other individual or organization was mentioned in the documents. See Spann v. Northwestern Mut. Life Ins. Co., 795 F. Supp. 386, 389 (M.D. Ala. 1992) (relevant, as a surrounding circumstance, that the plan documents mentioned only the sole-proprietor.)

West makes two basic arguments in support of his contention that he was an employee covered under the plan. The first argument is based on his interpretation of the plan's language, found in the following sections of the plan:

> Section 1.21--Employer
>
> The term "Employer" means Clarke Murphy, Jr. and any entity which shall have assumed in writing the obligations of this Plan and Trust.
>
> [For] purposes of determining service for eligibility and vesting, the term "Employer" shall include all Affiliates regardless of whether such Affiliates have adopted this Plan.
>
> Section 1.06 - Affiliate
>
> The term Affiliate means any
>
> . . .
>
> C. business entity which is part of an affiliated service group of the Employer as defined in [Tax] Code section 414(m).

5

Section 3.01 - Qualifications for Eligibility

> Each Employee who has completed at least one thousand (1,000) Hours-of-service during the twelve (12) month period immediately preceding the Effective Date shall become a Participant in this Plan on the Effective date; . . . .

Relying on these provisions, West reasons as follows: he was an employee of WPL; WPL was Murphy's affiliate; therefore, Murphy was his employer, and he was entitled to participate in the plan.

We reject this argument. It is clear that the second sentence of § 1.21 expanded the definition of "Employer" only for the "purpose[ ] of determining service for eligibility and vesting." (emphasis added). In other words, when calculating whether an employee had satisfied the 1,000 hours of service requirement, the employee could count hours that he or she worked for Murphy, who sponsored the plan, or an affiliate. Neither the expanded definition of employer nor the 1,000 hour qualification made an individual who was not Murphy's employee eligible to participate in the plan.

West's second argument is based on a statute, but not ERISA. He argues that he should be considered Murphy's employee by virtue of several sections of the Internal Revenue Code, including §§ 401, 410, 411, 414, 761, and 7701.

West's reliance on these sections is misplaced. Generally speaking, these sections deal with minimum participation, vesting, and funding standards that must be satisfied in order for an employee pension benefit plan to receive favorable tax treatment. For tax purposes, § 414(m) expands the scope of the term employer by defining affiliated service groups. These provisions of the Tax Code, however, do not vary ERISA's definition of participant or its requirement of an employer-employee relationship. In Reklau v. Merchants Nat. Corp., 808 F.2d 628, 630-31 (7th Cir. 1986), the court held expressly that § 401 of the Internal Revenue Code and, by implication, other parts of the Code (except those that refer to minimum participation, vesting, and funding) do not alter ERISA's requirements. Employee status under ERISA is determined not by the tax code but by the common law of agency. Darden, 503 U.S. at 322-24.

6

Other circumstances also weigh in Murphy's favor. West admits that neither he, nor WPL, ever contributed to the plan. The record indicates that from the beginning Murphy assumed sole responsibility for financing the plan. Murphy's funding is consistent with his tax documents that appear in the record. They provide additional evidence that Murphy did not intend to create an employee pension benefit plan open to WPL's employees. WPL's tax documents make no mention of any employee pension or welfare benefit plans. Also, beginning in 1986, when filing his individual tax returns, Murphy sought a "Keogh retirement plan and self-employed SEP [Simplified Employee Pension] deduction" equal to the amount of his yearly contribution to the plan. Murphy consistently specified on each tax form that there was only one participant in his plan. We note that we are considering the tax documents only for the purpose of analyzing West's claim. We take no position on whether Murphy's returns complied with the Tax Code. See Diak v. Dwyer, Costello & Knox, P.C., 33 F.3d 809, 813 (7th Cir. 1994).

After considering both the express language of the plan and the surrounding circumstances, we conclude that West was not eligible to participate in Murphy's plan. At no time was West Murphy's employee. In the absence of the statutorily required employer-employee relationship, West has no right to any benefits. Because West was not a participant as defined by § 1002(7), he cannot recover penalties or attorneys' fees. § 1132(c)(1) and (g)(1). We affirm the district court's dismissal of West's complaint.

AFFIRMED

7