# UNPUBLISHED

# UNITED STATES COURT OF APPEALS

## FOR THE FOURTH CIRCUIT

BRANCH BANKING & TRUST
COMPANY, Of Virginia,
          *Plaintiff-Appellant,*

v.

ROGER V.S. CAMP,
          *Defendant-Appellee.*

No. 01-1312

Appeal from the United States District Court
for the Eastern District of Virginia, at Norfolk.
Tommy E. Miller, Magistrate Judge.
(CA-00-501-2)

Argued: December 6, 2001

Decided: January 14, 2002

Before LUTTIG, KING, and GREGORY, Circuit Judges.

Reversed by unpublished per curiam opinion.

## COUNSEL

**ARGUED:** Robert L. O'Donnell, VANDEVENTER BLACK, L.L.P.,
Norfolk, Virginia, for Appellant. Michael Bruce Ware, JONES,
BLECHMAN, WOLTZ & KELLY, P.C., Newport News, Virginia,
for Appellee. **ON BRIEF:** Richard H. Ottinger, VANDEVENTER
BLACK, L.L.P., Norfolk, Virginia, for Appellant. Bryan H. Schempf,
JONES, BLECHMAN, WOLTZ & KELLY, P.C., Newport News,
Virginia, for Appellee.

Unpublished opinions are not binding precedent in this circuit. See Local Rule 36(c).

## OPINION

PER CURIAM:

This case involves appellee Roger Camp's guaranty to appellant Branch Banking & Trust Company of Virginia (BB&T) to pay the debts of Midwest Markets. Because the court below erred in its interpretation of the guaranty, we reverse.

### I

On April 17, 2000, Midwest Markets applied to BB&T for an irrevocable standby letter of credit in favor of Roundy's, a wholesale supplier of grocery products to Midwest Markets. The purpose of the letter of credit was to induce Roundy's to sell grocery products to Midwest Markets. The credit was limited to an amount not to exceed $200,000. Pursuant to the terms of the letter of credit, if Midwest Markets failed to pay for goods within ten days of the issuance of an invoice, Roundy's would then be able to draw on the letter of credit to pay the overdue invoices.

As a condition to obtaining the letter of credit, Midwest Markets executed a promissory note dated April 17, 2000, in the original principal amount of $200,000, payable to BB&T. As an additional requirement to obtaining the letter of credit, Roger Camp, who holds a majority interest in Midwest Markets, executed a guaranty agreement dated April 17, 2000 and acknowledged April 18, 2000. The guaranty stated, in pertinent part:

> As an inducement to [BB&T] to extend credit to and to otherwise deal with [Midwest Markets], and in consideration thereof, the undersigned . . . hereby absolutely and unconditionally guarantees to Bank and its successors and assigns the due and punctual payment of any and all notes, drafts, debts, obligations and liabilities, primary or secondary

> (whether by way of endorsement or otherwise), of Borrower, at any time, now or hereafter, incurred with or held by Bank, together with interest, as and when the same become due and payable, whether by acceleration or otherwise, in accordance with the terms of any such notes, drafts, debts, obligations or liabilities or agreements evidencing any such indebtedness, obligation or liability including all renewals, extensions and modifications thereof.

The guaranty provided Camp three options to define the limits on his liability. The form provided that Camp would simply indicate his choice by marking an "X" in the box next to the option selected. The first option provided that liability under the guaranty would be unlimited and applied to all indebtedness of Midwest Markets. The second option provided that the guaranty would be limited to indebtedness evidenced by a specific promissory note. The third option provided that the guaranty would be limited to a specific dollar amount. The initial guaranty signed by Camp had the first option marked. Later, the third option was checked, and the guaranty was modified to limit his liability to $200,000. At no time was the second option marked.

On April 17, 2000, BB&T issued the letter of credit to Roundy's with an original expiration date of May 1, 2000. Prior to May 1, 2000, Midwest Markets, through Camp, requested an extension of the letter of credit from May 1 to May 12, 2000.

At this point the parties' narration of events diverges. On May 12, Camp asked BB&T to prepare the documents necessary for a further extension of the letter of credit. According to Camp, his request was limited to preparing the documents for the extension; he asserts he never actually requested the extension. According to BB&T, Camp made an actual oral request for the letter of credit to be extended until June 15, 2000 and, on May 18, BB&T extended the letter of credit via a letter faxed from E. Neal Crawford, Senior Vice President of BB&T, to Roundy's. Roundy's resumed shipment of goods to Midwest Markets.

On May 23, 2000, Roundy's demanded payment from BB&T on the letter of credit for payment of overdue and unpaid invoices to Midwest Markets in the amount of $122,030.84. On May 25, BB&T

honored Roundy's demand for payment on the letter of credit, and BB&T paid Roundy's the full amount demanded. In conjunction with that payment, BB&T took an assignment of the Roundy's invoices that were unpaid by Midwest Markets. Midwest Markets refused to repay BB&T. Camp refused to honor the guaranty.

On June 2, 2000, Midwest Markets filed for bankruptcy protection. On July 7, 2000, BB&T filed suit in the Eastern District of Virginia. The parties consented to a bench trial before the Magistrate. On February 9, 2001, four days before the start of trial, the U.S. Bankruptcy Court for the Northern District of Indiana entered an Order Allowing Claim in the amount of $122,030.84. The order was endorsed as "agreed" by bankruptcy counsel for Midwest Markets.

BB&T asserted at trial that it was entitled to judgment against Camp in the principal amount of $122,030.84, plus interest, costs and attorneys' fees on the ground that Camp unconditionally guaranteed "all notes, drafts, debts, obligations and liabilities" of Midwest Markets. At trial, the magistrate judge excluded the bankruptcy order because it was produced, in his view, too close to the beginning of trial and because he found it was not relevant to Camp's guaranty.

In an opinion delivered from the bench, the magistrate judge found for Camp. The magistrate judge held that the guaranty was limited to debts incurred pursuant to the letter of credit, and further found that the letter of credit expired on May 12, 2000. The magistrate judge found that he did not need to decide the disputed issue of whether Camp's oral statements to BB&T were an actual request for an extension or merely a request for the preparation of appropriate documents. Instead, he ruled that any extension of the letter of credit was required to have been in writing. Accordingly, the magistrate judge found Camp not liable to BB&T under the guaranty.

II

We review questions of law de novo. *West v. Murphy*, 99 F.3d 166, 167 (4th Cir. 1996).

Underlying a large portion of BB&T's appeal is its assertion that the magistrate judge erred when he ruled that the guaranty is limited

to debts incurred pursuant to the letter of credit. BB&T is correct. The magistrate judge erred in his interpretation of the guaranty because the guaranty was unlimited. The guaranty covered all "notes, drafts, debts, obligations and liabilities . . . of [Midwest Markets], at any time, now or hereafter, incurred with or held by [BB&T] . . . ." The form of the guaranty had a mechanism for limiting its coverage to a specific instrument, viz., the check box, but the parties agree that the mechanism was not employed in this case. Accordingly, the guaranty was unconditional, covering all debts of Midwest Markets to BB&T, with the sole limitation that the total amount guaranteed cannot exceed $200,000.

BB&T argues that Camp is liable under the guaranty because Midwest Markets is indebted to BB&T in four distinct ways: (1) the bankruptcy order; (2) the invoices assigned to BB&T from Roundy's; (3) the letter of credit; and (4) the subrogation of Roundy's rights against Midwest Markets. Because Midwest Markets was indebted to BB&T by virtue of the assignment of the invoices, we need not consider the other three theories.

The testimony and evidence at trial unequivocally revealed that Roundy's assigned Midwest Markets' unpaid invoices to BB&T. These invoices represented a debt of Midwest Markets to Roundy's, incurred by the purchase of goods from Roundy's. The writing evidencing the assignment was introduced at trial. (JA 21.) And Mr. Crawford testified that BB&T took an assignement of the invoices. (JA 72-73.) The assignment transferred to BB&T Roundy's rights to payment from Midwest Markets. *See* Va. Code § 8.2-210(2) (establishing general validity of assignment of rights of buyer and seller); Restatement (Second) of Contracts § 317(2) (1979) (generally providing for assignment of contractual rights); *id.* § 317, illus. 1. The evidence went unrebutted at trial. Even now, on appeal, Camp does not dispute the validity of the assignment. The assignment of the invoices created a debt of Midwest Markets held by BB&T. We find that the guaranty, which clearly states that Camp guarantees to BB&T all debts of Midwest Markets held by BB&T, was broad enough to cover the assigned debt.

Accordingly, the judgment below is reversed, and the case is remanded for further proceedings not inconsistent with this opinion.

*REVERSED*