**UNPUBLISHED**

# UNITED STATES COURT OF APPEALS
## FOR THE FOURTH CIRCUIT

ROBERT LOPRIORE, III,
　　　　　　*Plaintiff-Appellant,*

　　　　　v.

RALEIGH CARDIOVASCULAR AND
THORACIC, INCORPORATED; RALEIGH
CARDIOVASCULAR AND THORACIC,
INCORPORATED MONEY PURCHASE
PENSION PLAN; JAMES HOWELL DAVIS,
M.D., individually and as Plan
Administrator and Trustee of
Raleigh Cardiovascular and
Thoracic, Incorporated Money
Purchase Pension Plan and Profit
Sharing Plan; ABDUL GHAFOOR
CHAUDHRY, M.D., individually and
as Trustee of Raleigh
Cardiovascular and Thoracic,
Incorporated Money Purchase
Pension Plan and Profit Sharing
Plan; L. GEORGE ALEXANDER, M.D.,
Trustee of Raleigh Cardiovascular
and Thoracic, Incorporated Money
Purchase Pension Plan and Profit
Sharing Plan; RALEIGH
CARDIOVASCULAR AND THORACIC,
INCORPORATED PROFIT SHARING PLAN;
RCV TECHNOLOGY, INCORPORATED,
　　　　　　*Defendants-Appellees,*

　　　　　　and

PROFESSIONAL MANAGEMENT OF
RALEIGH, INCORPORATED,
　　　　　　*Defendant.*

No. 99-1861

Appeal from the United States District Court
for the Eastern District of North Carolina, at Raleigh.
W. Earl Britt, Senior District Judge.
(CA-97-480-5-BR)

Argued: April 3, 2000

Decided: February 8, 2002

Before WIDENER, Circuit Judge, Claude M. HILTON,
Chief United States District Judge for the
Eastern District of Virginia, sitting by designation, and
David A. FABER, United States District Judge for the
Southern District of West Virginia, sitting by designation.

---

Affirmed by unpublished per curiam opinion.

---

**COUNSEL**

**ARGUED:** Leslie Bruce McDaniel, MCDANIEL, ANDERSON &
STEPHENSON, L.L.P., Raleigh, North Carolina, for Appellant. Mark
Stanton Thomas, MAUPIN, TAYLOR & ELLIS, P.A., Raleigh,
North Carolina, for Appellees. **ON BRIEF:** D. Royce Powell, Joanne
J. Lambert, MAUPIN, TAYLOR & ELLIS, P.A., Raleigh, North Car-
olina, for Appellees.

---

Unpublished opinions are not binding precedent in this circuit. See
Local Rule 36(c).

---

**OPINION**

PER CURIAM:

Plaintiff Robert Lopriore, III appeals the district court's grant of summary judgment on his claims under 29 U.S.C. § 1132(c)(1) and the district court's judgment in favor of the defendants, Raleigh Cardiovascular & Thoracic Inc. (Raleigh C & T), Drs. Davis, Chaudhry, and Alexander, RCV Technology, Inc. (RCV Tech), Professional Management of Raleigh, Inc.,[1] and Raleigh C & T's money purchase plan and profit sharing plan (the plans), on his claim alleging a deprivation of benefits under ERISA. We affirm.

I.

Raleigh C & T is a corporation located in Raleigh, Wake County, North Carolina. Drs. Davis and Chaudhry started practicing medicine at Raleigh C & T in 1982, and Dr. Alexander joined the practice from 1991 to 1994. Raleigh C & T sponsored two self-funded employee benefit plans, the money purchase pension fund and the profit sharing pension fund. The plans were amended and restated in 1986, August 1991, and November 1991. RCV Tech was a corporation formed by Drs. Chaudhry and Davis on November 9, 1987. These two doctors were the sole shareholders and officers of RCV Tech. Although RCV Tech and Raleigh C & T shared office space, the two corporations were separate corporate entities, with separate articles of incorporation and separate income tax returns.

Drs. Davis and Chaudhry began employment discussions with Lopriore in October 1987 because they were interested in his perfusion services.[2] Lopriore was hired to work for RCV Tech at a salary of $36,000 per year and began work on November 10, 1987. He signed his employment agreement on November 12, 1987 with RCV Tech. RCV Tech never sponsored its own pension plans, and Lopri-

---

[1]Professional Management of Raleigh, Inc. is not a party to this appeal.

[2]A perfusionist monitors and regulates a variety of physiologic functions during various cardiovascular surgeries (cardiopulmonary bypasses), such as blood gas analysis, membrane and bubbler oxygenation, cardioplegia administration, and the use of vasoactive drugs.

ore's work agreement with RCV Tech did not specify any type of pension plan or benefits to be provided for him. No contributions were made to the Raleigh C & T plans on Lopriore's behalf until 1991. Contributions were then made by Raleigh C & T on Lopriore's behalf for the years 1991, 1992, 1993, and 1996. The enrollment of Lopriore into the plans came after Professional Management of Raleigh, Inc. spoke with Lopriore regarding the benefits. Lopriore's enrollment did not change his employment status with RCV Tech.

Raleigh C & T began sponsorship of the plans in 1977 and remained the sponsor until closing its doors in 1997. In January 1986, before Lopriore commenced his employment with RCV Tech, Raleigh C & T executed the documents to adopt the terms and the provisions of the NCNB Master Contribution Plan and Trust (1986 Master Plan) applied here. When Lopriore began working as a perfusionist for RCV Tech, the following terms from the 1986 Master Plan were in force at Raleigh C & T:

> Section 18.1 *Multiple Employers*.
>
> (a)   *General*. The Plan may be sponsored by more than one employer if (i) all sponsoring employers execute the same Adoption Agreement and (ii) each sponsoring employer would be an Affiliated Employer with respect to the Plan if not a sponsor. If the employers sponsoring the Plan are all corporations that are members of the same "affiliated group" of corporations within the meaning of Section 1504 of the Code, the provisions of Section 18.1(b) shall apply.

Section 18.1(b) referred to "adopting corporations" in its provisions regarding "participating employers." The adoption agreement, to which the 1986 Master Plan referred, stated that if any employers aggregated with respect to the Master Plan under sections 414(b), 414(c), or 414(m) of the tax code as it existed in January 1986, those employers shall have adopted the 1986 Master Plan by executing the adoption agreement as set forth in 18.1(a) of the 1986 Master Plan. The adoption agreement further represented that if any other employers became aggregated in the future, those new employers would perform one of two actions: 1) adopt the 1986 Master Plan or 2) the plans

would be amended and restated without using that form of the adoption agreement. When RCV Tech was incorporated, and throughout its existence as a separate corporation, it never executed the adoption agreement to adopt the 1986 Master Plan.

Raleigh C & T amended and restated the plans in August 1991 and in November 1991, and RCV Tech did not execute adoption agreements under the amended plans. From 1987 until 1990-91, the plans operated on a plan year which began on July 1 and ended on June 30. The plans had a short plan year from July 1, 1991 to December 31, 1991, and following the last 1991 amendment and restatement, Drs. Davis, Chaudhry, and Alexander became the trustees of the plans and the plan began operating on a calendar year plan year effective January 1, 1992.

In 1991, Lopriore was enrolled in the plans in the short plan year. Professional Management of Raleigh, Inc. wrote a letter to Lopriore in February 1992 explaining that he had been enrolled in the plans and that a contribution had been made for him in the short plan year. Contributions were also made on Lopriore's behalf for the plan years of 1992, 1993, and 1996. Raleigh C & T ceased operations in 1997.

Lopriore received his salary from RCV Tech from 1987 until 1996, and contributions to the plans were made on his behalf as stated by Raleigh C & T starting in 1991. Lopriore also received two loans from RCV Tech in 1989 and 1992, memorialized in two promissory notes, and he made salary-increase requests and all other employment related requests to RCV Tech. Lopriore became an employee of Raleigh C & T in 1996 when RCV Tech and Raleigh C & T merged. In 1996, Lopriore through his attorneys, made several requests to Raleigh C & T to provide him with the plan documents. He received timely responses to those requests. On April 14, 1997, Raleigh C & T informed Lopriore that it was discontinuing its operations.

On June 18, 1997, Lopriore filed an eleven-count complaint in the United States District Court for the Eastern District of North Carolina against the defendants. The complaint alleged: 1) deprivation of benefits under ERISA, 2) misappropriation by defendants in violation of ERISA, 3) disqualification losses under ERISA, 4) failure to provide documents in violation of ERISA, 5) failure and refusal to provide

documents in violation ERISA, 6) breach of fiduciary duty in violation of ERISA, 7) interference with protected rights in violation of ERISA, 8) federal common law breach of contract, 9) federal common law promissory estoppel/misrepresentation, 10) punitive damages, and 11) attorneys' fees. On April 1, 1998, the defendants moved for summary judgment and to strike Lopriore's demand for a jury trial. The magistrate judge made the following recommendations in a memorandum opinion, which the district court adopted as its own on December 15, 1998. First, the court granted the defendants' motion for summary judgment as to Lopriore's third, fourth, fifth, seventh, eighth, ninth, and tenth claims and dismissed the claims. Second, the court granted the defendants' motion for summary judgment as to Lopriore's second and sixth claims as to RCV Tech and the plans, but denied the motion as to Raleigh C & T and Drs. Davis, Chaudhry, and Alexander. Third, the court denied defendants' motion for summary judgment as to Lopriore's first and eleventh claims. Fourth, the court granted defendants' motion to strike the demand for a jury trial.

The district court conducted a bench trial on February 8 and 9, 1999. The district court found that Lopriore was not entitled to participate in Raleigh C & T's two plans before 1991 because he was an employee of RCV Tech and RCV Tech had not adopted the plans; therefore, the district court denied Lopriore's claims for contributions and breach of fiduciary duty between 1987 and 1991. The district court did find, however, that Dr. Davis breached his fiduciary duty by collecting loans and distributions from the plans and awarded Lopriore attorneys' fees for bringing the breach to light. Lopriore appeals the district court's judgment regarding his eligibility to participate in the plans from 1987-1991 and his related claims. Dr. Davis and the other defendants did not file a notice of appeal.

We review the district court's grant of summary judgment *de novo*. See *Higgins v. E.I. DuPont de Nemours & Co.*, 863 F.2d 1162, 1167 (4th Cir. 1988). Summary judgment is appropriate when there is no genuine issue of material fact to be decided by the trier of fact and the moving party is entitled to judgment as a matter of law. Fed. R. Civ. P. 56(c). We must construe the facts in the light most favorable to the non-moving party. See *Perini Corp. v. Perini Constr., Inc.*, 915 F.2d 121, 123-24 (4th Cir. 1990).

We review the judgment of the district court after the two day bench trial under the following standards: we review matters of law de novo; we review factual findings under a clearly erroneous standard; and we review the imposition of penalties and award of attorney's fees for abuse of discretion. See *West v. Murphy*, 99 F.3d 166, 167 (4th Cir. 1996).

## II.

On December 15, 1998, the district court entered an order confirming the magistrate's memorandum and recommendation regarding the defendants' motion for summary judgment. Lopriore contends that the portion of that order denying him the statutory penalty amounts for defendants' alleged failure to produce documents was in error. In his complaint, Lopriore asserted that 29 U.S.C. § 1024 obligated the defendants to produce various plan documents to comply with Lopriore's many requests.[3] He sought to recover the penalty amounts under 29 U.S.C. §§ 1132(c)(1)(A)-(B). Section 1132(c)(1)(A) describes the penalties to be imposed upon a plan administrator who fails to meet the requirements of 29 U.S.C. § 1166, the filing and publication requirements for group health plans. See 29 U.S.C. § 1132(c)(1)(A); 29 U.S.C. § 1166. Section 1132(c)(1)(B) states that if a plan administrator fails or refuses to comply with a request for information that the administrator is required to furnish within 30 days after such request, a statutory penalty of $100 per day may be imposed.

The magistrate judge reasoned that there was a factual question of whether the plantiff was eligible to participate in any applicable plan so summary judgment was not awarded because of lack of participation, but because defendants responded in a timely fashion to all of Lopriore's written requests for plan documents. Lopriore made three written requests in August 1996, February 1997, and May 1997,

[3]Section 1024 provides that the administrator of an employee benefit plan must furnish to a participant a copy of the summary plan description with modifications and changes within 90 days after the person becomes a participant, as well as provide, upon written request of any participant, a copy of the latest updated summary plan description, the latest annual report, and other named papers. See 29 U.S.C. § 1024(b)(1); 29 U.S.C. § 1024(b)(4).

respectively. The defendants responded to each one of these written requests as required by 29 U.S.C. § 1024(b)(4).

Lopriore argues that because 29 U.S.C. § 1024(b)(1) requires a plan administrator to furnish participants automatically with plan documents, and defendants did not comply automatically, he is entitled to statutory penalties. Defendants concede that a failure to provide documents automatically due to a participant is a technical violation of § 1024(b)(1), but assert that the statutory penalties are not available for this type of violation. The defendants argue that these statutory penalties are available only for failures to comply with "request[s] for" plan information. 29 U.S.C. § 1132(c)(1)(B). In fact, the letters from Lopriore's attorneys to the defendants referred to 29 U.S.C. § 1024(b)(4), demonstrating that Lopriore was making written requests for documents, to which the defendants promptly responded.

In *Sedlack v. Braswell Services Group, Inc.*, we upheld a district court's imposition of penalties upon a plan administrator when the participant had requested information in writing and did not receive it in a timely fashion. 134 F.3d 219, 226 (4th Cir. 1998); but see *Crotty v. Cook*, 121 F.3d 541, 548 (9th Cir. 1997) (imposing statutory penalties on plan administrator for failing to comply with oral requests for plan information that the administrator was to provide automatically). We interpreted 29 U.S.C. § 1132(c)(1)(B) as requiring that a request be made before penalties may be imposed. *Sedlack*, 134 F.3d at 226 (requiring not more than one request); see also *Doe v. Travelers Ins. Co.*, 167 F.3d 53, 60-61 (1st Cir. 1999) (interpreting 29 U.S.C. § 1132(c) as reserving the $100 per day penalty only to those cases in which conduct falls squarely within the terms of the section). In order for the statutory penalties in 29 U.S.C. § 1132(c) to apply, Lopriore would have to demonstrate that the defendants failed to provide him with documents following his written requests. We agree with the district court that because Lopriore cannot show that the defendants failed to respond to his written requests, the defendants were entitled to a grant of summary judgment on those claims. We affirm that judgment.

We now turn to the district court's judgment regarding Lopriore's claim that he was deprived benefits under ERISA.

### III.

Lopriore asserts that the district court erred in holding that he was not a participant of Raleigh C & T's two plans under ERISA and that he was therefore not entitled to any damages or benefits. The district court concluded the following: 1) Raleigh C & T and RCV Tech were separate legal entities, filing separate income tax returns, from the dates of their respective incorporations until August of 1996 when the two corporations merged; 2) Raleigh C & T and RCV Tech constituted an affiliated service group under Internal Revenue Code § 414(m);[4] 3) Lopriore was an employee of Raleigh C & T for tax purposes; and 4) prior to 1991, when Lopriore became enrolled in the plans, RCV Tech never affirmatively adopted the plans as required by the plans.[5]

Lopriore argues that by concluding that he was an employee of Raleigh C & T for tax purposes, the district court should have concluded that he was also eligible to be a participant of the plans based on this status. We disagree. Under ERISA, a participant is defined as "any employee or former employee of an employer who is or may become eligible to receive a benefit of any type from an employee benefit plan." 29 U.S.C. § 1002(7). An employee is defined as "any individual employed by an employer." 29 U.S.C. § 1002(6). The district court did not conclude that Lopriore was an employee under ERISA, rather it concluded that Lopriore was an employee for tax purposes.

In *National Mutual Insurance Co. v. Darden*, 503 U.S. 318 (1992), the Supreme Court stated that ERISA's definition of employee is "nominal, . . . completely circular and explains nothing." *Darden*, 503 U.S. at 323. The Court decided to adopt a common-law test for deter-

---

[4]One definition given in § 414(m) of an affiliated service group is a group consisting of a service organization, referred to as the first organization, and any service organization that is a shareholder or partner of the first organization and regularly performs services for the first organization or is regularly associated with the first organization in performing services for third persons. See 26 U.S.C. § 414(m)(2).

[5]Even after 1991 until the time RCV Tech and Raleigh C & T merged, RCV Tech never sponsored its own employee pension benefit plans.

mining who qualifies as an employee under ERISA by considering the amount of control of the hiring party and other factors. *Darden*, 503 U.S. at 323 (citing *Community for Creative Non-Violence v. Reid*, 490 U.S. 730, 740, 751-52 (1989)). In the case before us, the district court did not do an exhaustive test to determine Lopriore's employee status, but it did find that Lopriore received his pay from RCV Tech, that RCV Tech was a legally separate corporation from Raleigh C & T, and that RCV Tech never affirmatively adopted the plans as required by the plans themselves.

The district court's conclusion that Lopriore was an employee of Raleigh C & T for tax purposes was based on § 414(m) of the Internal Revenue Code and Internal Revenue Service regulations. The district court stated that "[w]hile it may affect the tax status of the plans, [Lopriore]'s employee status does not impart any rights under the plans upon him." We agree with this conclusion and follow this court's decision in *West v. Murphy*, 99 F.3d 166 (4th Cir. 1996).

In *West*, plaintiff West claimed that he should have been entitled to participate in an employee benefit plan formulated by Murphy, another person in West's law partnership. *West*, 99 F.3d at 167. Murphy's employee benefit plan contained language stating that employers under the plan included affiliates, meaning any "business entity which is part of an affiliated service group of [Murphy]" as defined by § 414(m) of the tax code. *West*, 99 F.3d at 169. West argued that under § 414(m) and other sections of the tax code, he should be considered Murphy's employee. *West*, 99 F.3d at 169. We rejected these arguments and held that those provisions of the tax code, including § 414(m), "deal with minimum participation, vesting, and funding standards that must be satisfied in order for an employee pension plan to receive favorable tax treatment." *West*, 99 F.3d at 169. We found that nothing in § 414(m) varied ERISA's definition of participant or the requirements of an employer-employee relationship. *West*, 99 F.3d at 169; see also *Reklau v. Merchants Nat'l Corp.*, 808 F.2d 628, 631 (7th Cir. 1986) (holding that if Congress intended certain sections of the tax code, such as § 401, to be applicable to ERISA, it would have so stated). We find that the reasoning in *West* controls this case, and we therefore affirm the district court's judgment.

Because we affirm the district court's judgment that Lopriore was a non-participant in the plans prior to 1991, we also hold that he was

not entitled to recover denied benefits or to assert claims of breach of fiduciary duty or misappropriation of benefits that may have occurred prior to 1991.

Accordingly, the judgment of the district court is

*AFFIRMED.*[6]

---

[6]This case is essentially a claim by Lopriore that he was a participant in the various plans involved in this case prior to the time that any payments were made into the plans on his behalf, which payments commenced in 1991. He also claimed money benefits on account of the discovery during the case that one of the physicians involved had made loans from his own account in the funds which were not repaid but which were reported by the physician as income. While the district court properly denied any money recovery on this account, it also properly allowed attorney's fees, and that item is not appealed.

There were some 11 causes of action stated in the complaint, with multiple sub-parts, each of which, save the attorney's fees not appealed, was correctly decided in favor of the defendants for the reasons stated in the opinions of the magistrate judge, the district judge, and in our opinion here. The various sub-parts of the plaintiff's claims decided adversely to him, which are not taken up with specificity in his brief in this court, are not discussed in this opinion. And we emphasize that the judgment of the district court is affirmed in all respects.